607 A.2d 850

**PENNSYLVANIA BAR ASSOCIATION, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, Pennsylvania Insurance Department and Policy Management Corporation, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1991.

Decided April 20, 1992.

352

David H. Maron, for petitioner.

Amy L. Weber, Dept. Counsel, with her, Arthur F. McNulty, Acting Deputy Chief Counsel, for respondent, Com. of Pennsylvania and Pennsylvania Ins. Dept.

Alan D. Chute, for respondent, Policy Management Corp.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

McGINLEY, Judge.

This is a motion for summary relief brought by the Pennsylvania Bar Association (PBA) asserting that the 1990 amendments to the Vehicle Code contained in the Act of February 7, P.L. 11 (Act 6) which should be declared unconstitutional.[1] PBA contends that Act 6 violates its members' procedural and substantive due process rights under the Pennsylvania and United States Constitutions, that Act 6 deprives its members of equal protection of the law in

---

1. Section 20 of Act created a new Chapter 18 of the Vehicle Code, relating to motor vehicle insurance fraud, codified at 75 Pa.C.S. §§ 1801–1828 (Chapter 18).

violation of the Pennsylvania Constitution, that Act 6 denies its members a remedy for injury to reputation provided them in the Pennsylvania Constitution, that Act 6 is impermissibly vague in violation of the substantive due process requirements of the Pennsylvania and United States Constitutions, that Act 6 infringes on its member's protected speech, and that Act 6 violates the separation of powers doctrine set forth in the Pennsylvania Constitution.

The Vehicle Code's new Chapter 18, created by Act 6, is a comprehensive legislative response to a perceived failure of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7, to remedy and contain the rising costs of automobile insurance in Pennsylvania. In an attempt to reduce the factors that contribute to higher insurance costs for consumers, the legislature created various anti-fraud provisions, including a subchapter providing for the establishment of an anti-fraud informational bureau. 75 Pa.C.S. §§ 1821–1828 (Subchapter C). Section 1821, 75 Pa.C.S. § 1821, establishes the Motor Vehicle Fraud Index Bureau (Index Bureau). Every private passenger automobile insurer in Pennsylvania must participate in the Index Bureau, which serves as a repository for the collection of information, purportedly to be used to combat fraud in automobile insurance claims. An insurer's authority to transact business is conditioned on reporting of "suspected fraudulent claims" to the Index Bureau within 45 days of receipt, including an identification of the claimants and their attorneys. 75 Pa.C.S. § 1822.[2] Chapter 18 does not define

---

**2.** 75 Pa.C.S. § 1822 (Section 1822) provides:

(a) Requirements—Each insurer licensed to write motor vehicle insurance in this Commonwealth shall, as a condition of authority to transact the business of insurance in this Commonwealth, report information on suspected fraudulent claims and applications for benefits arising out of the maintenance and use of a motor vehicle in this Commonwealth with the Bureau within 45 days of receipt of such claim.

(b) Content—The information filed by insurers pursuant to subsection (a) shall include, but not be limited to:

(1) Identification of claimants.

(2) Identification of medical providers.

(3) Identification of repair shops.

a "suspected fraudulent claim." All information that the Index Bureau collects is made available upon request to law enforcement officers, member-insurers, the Insurance Department (Department) and similar fraud index bureaus. 75 Pa.C.S. § 1824.

On April 15, 1991, PBA petitioned for declaratory and injunctive relief seeking to have this Court declare Subchapter C unconstitutional. PBA named the Commonwealth of Pennsylvania and the Department as respondents. On July 8, 1991, the Commonwealth and the Department moved to dismiss PBA's action for failure to join an indispensable party, namely Policy Management Corporation (PMC). The motion to dismiss states that PMC is a private corporation charged with the administration of the statutory provisions set forth in Subchapter C. PBA was permitted by this court to amend its complaint to include PMC as a respondent. PBA filed for summary relief on July 5, 1991, requesting that this Court declare Chapter 18 unconstitutional. Pursuant to this Court's order of July 18, 1991, the Index Bureau was permitted to collect the information required by Chapter 18, but not to release the information until resolution of this controversy.

### Right to Summary Relief

■ Summary relief will only be granted when the moving party establishes that the case is clear and free from doubt, that there are no issues of genuine material fact to be tried, and that it is entitled to relief as a matter of law. *See Pennsylvania Independent Petroleum Producers v. Department of Environmental Resources*, 106 Pa.Commonwealth Ct. 72, 75, 525 A.2d 829, 832 (1987). The Department contends that PBA has failed to prove its entitlement to summary relief because its case rests on the mere

(4) Identification of insurance adjusters.
(5) Identification of attorneys representing claimants.
(6) Description of claims.
(7) Other information deemed relevant by the submitting insurer or bureau.
(8) Other information required by the Insurance Commissioner.

assumption that Chapter 18 injures or threatens to injure the reputations of its members, and that no actual injuries have been alleged.

We construe PBA's challenge to the provisions of Subchapter C as an assertion that these provisions are unconstitutional on their face, leaving us with only a question of law to resolve, and for which no material facts are necessary. *Bensalem Township School District v. Commonwealth*, 518 Pa. 581, 589, 544 A.2d 1318, 1322 (1988). Additionally, we note that PBA is hampered by the inability to ascertain any specific member who has suffered an injury to reputation by having his or her name reported to the Index Bureau by an insurer, because by agreement of the parties, the Index Bureau has continued compiling the names of attorneys reported but has not made any dissemination. However, judicial review of such a matter is not per se premature.

### *Presence of Harm*

█ The Department contends that PBA fails to show any harm resulting to its members from the operation of Chapter 18 that would justify relief, and that any action taken by this court is tantamount to an advisory opinion. PMC argues that all PBA is able to allege at this time is that Subchapter C requires member insurers to make reports naming attorneys in accordance with Section 1822, and it authorizes PMC to manage these reports. Both the Department and PMC state that the existence and dissemination of these reports will not cause injury to attorneys' reputations, because the statute does not provide that the attorneys be deemed "suspects," "frauds," or anything but the attorneys of claimants involved in suspicious claims.

The Pennsylvania Supreme Court has already recognized that the existence of government records containing information that might subject a party to negative stigmatization is a "threat" to that party's reputation. *Wolfe v. Beal,*

477 Pa. 477, 480, 384 A.2d 1187, 1189 (1978).[3] We cannot fault PBA for failing to provide instances of specific harm to specific individuals listed with the Index Bureau where the names of the individuals so listed are not and will not be available to PBA for review.

■ Additionally, we find the argument that the reporting required by Section 1822 does not subject attorneys to negative stigmatization to be disingenuous, given that the Department later rationalizes the need for reporting the names of attorneys by stating that attorneys play a significant role in the perpetration of insurance fraud. Brief of the Insurance Department at 45. If the attorneys who represent clients in cases of suspected fraud are not also suspect themselves, there is no purpose in collecting their names in an anti-fraud register.

The fact that the reports are only accessible to member-insurers and several other categories of individuals does not make them any less damaging, as the attorney must deal with these insurers in the course of his business, and his reputation in their eyes is at least as valuable as it is in the eyes of the general public, if not more so. Consequently, we find merit in PBA's allegation that Section 1822's requirement that member insurers report the names of attorneys involved in "suspected fraudulent claims" inevitably leads to the injury of these attorneys' reputations, based upon suspicion alone.

3. *Wolfe* contrasts in this respect with *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1976), a case which the Department cites in its brief. In *Whalen,* a group of prescription drug consumers and physicians attempted to overturn a New York law that required the New York Department of Health to maintain records on all prescriptions written on Schedule II drugs. The Supreme Court found the law was constitutional, as the right to privacy relied upon by the consumers and physicians was based on "the shadows cast by a variety of the provisions of the Bill of Rights." *Whalen,* at 598, n. 23, 97 S.Ct. at 876, n. 23. The Supreme Court recognized the government's right to compile data for public purposes and noted that it is generally accompanied by a concommitant duty to avoid unwarranted disclosures.

## Standing

■ PBA's initial request to this court was that Subchapter C, which contains Section 1822, be declared unconstitutional. However, in PBA's application for summary relief, PBA broadened its request and now seeks a declaration that all of Chapter 18 be declared unconstitutional.[4] PMC argues that PBA cannot extend its request for summary relief to provisions of the law that were not challenged in its petition for review, and it further argues that even PBA's challenge to Subchapter C is overbroad. PMC contends that PBA does not have standing to challenge sections of Subchapter C which do not affect attorneys. We agree with PMC on the issue of standing. The only section of Chapter 18 that PBA argues has a deleterious effect on its members is 75 Pa.C.S. § 1822(b)(5), which requires member insurers to report the names of attorneys representing claimants in suspected fraudulent claims. Any relief available to PBA must be tailored accordingly.

## State Action

■ PBA asserts that Subchapter C violates rights guaranteed to its members by both the Pennsylvania and the federal constitutions. The Department's first challenge to PBA's assertion of constitutional violations is that PBA has failed to show sufficient state action and involvement necessary to implicate any constitutional guarantee. The Department contends that it played only a minimal role in the start-up of the Index Bureau, that it will play no role in its day-to-day operation, and that any purported injury to the reputations of PBA members will result from actions taken only by the insurers who make the reports. The Department argues that the actions of such insurers, while taken pursuant to a statutory scheme, are not state actions, citing *Staino v. Pennsylvania State Horse Racing Commission*, 98 Pa.Commonwealth Ct. 461, 512 A.2d 75 (1986) (no state action found when a patron at a race track had been ejected by a track employee pursuant to a provision of

4. 75 Pa.C.S. §§ 1801–1828.

state law authorizing such expulsions) and *Henderson v. Workmen's Compensation Appeals Board (Rockwell International, Inc.)*, 69 Pa.Commonwealth Ct. 613, 452 A.2d 277 (1982) (no state action found where insurers had utilized statutory provisions to terminate workers' compensation benefits).

The Department's argument does not withstand scrutiny. The Department is the agency legislatively appointed to designate the Index Bureau, which then is to file a plan of operation with the Department. 75 Pa.C.S. § 1822. The Department receives annual reports from the Index Bureau and is authorized to request information from the Index Bureau. 75 Pa.C.S. § 1824. The Index Bureau's function of culling through reports of suspected fraud to maintain a data base open to the inspection of insurers and law enforcement officials is precisely what PBA challenges as an unconstitutional deprivation of their members' rights. From a review of Chapter 18, it is clear that the legislature authorized the Department to promulgate rules and regulations to carry out the objectives of Subchapter C, and that the legislature envisioned the Department as the repository of the power to enforce the provisions of Subchapter C and to regulate the Index Bureau.[5] The mere fact that the Index Bureau is maintained by funds raised from the private insurers does not convert the Index Bureau into a private entity, nor does the insertion of PMC between the Department and the day-to-day operations of the Index Bureau achieve such a result. Finally, we note that PMC itself disagrees with the Department's contention that no state action is involved, stating in its brief that it believes it is acting under the direction of state law. Brief of Policy Management Corporation at 7, n. 2.

### Reputation

■ PBA bears a heavy burden in its challenge to Subchapter C. A lawfully enacted statute enjoys a presumption in favor of constitutionality and will not be declared

5. 75 Pa.C.S. § 1828.

unconstitutional unless it clearly, palpably, and plainly violates the constitutions of the Commonwealth or the United States. *Finucane v. Pennsylvania Milk Marketing Board*, 136 Pa.Commonwealth Ct. 272, 276, 582 A.2d 1152, 1154 (1990).

PBA contends that the listing of the names of attorneys who represent clients involved in suspected fraudulent claims with the Index Bureau, as required by Section 1822(b)(5), will operate to damage the reputations and business of PBA members through negative stigmatization. PBA argues that such negative stigmatization infringes on its members' fundamental right to protect their reputations as guaranteed under Article 1, Section 1 of the Pennsylvania Constitution.

■ Article 1, Section 1 of the Pennsylvania Constitution provides, in relevant part, "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property and reputation, and of pursuing their own happiness." Despite this language, the Department and PMC contend that reputation should not be accorded the same level of protection as other rights that are classified as fundamental, and it urges us to be guided by *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), in rendering our decision. *Paul* is a Kentucky case where the Supreme Court stated that a threat to reputation, when not combined with a threat to some other "more tangible" interest, does not invoke the procedural protections of the Due Process Clause of the United States Constitution. *Paul*, 424 U.S. at 701, 96 S.Ct. at 1160.

In *Hatchard v. Westinghouse Broadcasting*, 516 Pa. 184, 532 A.2d 346 (1987), the Pennsylvania Supreme Court had occasion to consider the level of protection the Pennsylvania Constitution accords the right to defend one's reputation in

the context of a defamation suit.[6] The *Hatchard* Court recognized the special value placed upon an individual's reputation by the Pennsylvania Constitution and stated that the Pennsylvania Constitution establishes reputation as a fundamental right in the same class with life, liberty and property, which cannot be abridged by government without compliance with state constitutional standards of due process and equal protection. Consequently, we conclude that reputation is a fundamental right under the Pennsylvania Constitution, and it is entitled to the protection of procedural due process even in the absence of a more "tangible" right.[7]

## Procedural Due Process

PBA contends that the Section 1822(b)(5) reporting requirements violate its members' rights to protect their reputations by providing for the collection and disclosure of damaging information in a manner that is unreasonable and

6. *Hatchard* concerned the operation of the "shield law" that protects the identity of a publication's confidential sources, even during the discovery process of a defamation suit. The Supreme Court held that this law could not be interpreted to shield information that could not possibly lead to discovery of the identity of the confidential source, and shielding such information would infringe too deeply upon the fundamental right of reputation guaranteed to the citizens of Pennsylvania.

7. PBA alternatively contends that its members have suffered a loss in the "reputation-plus" manner described in *Paul*, as 75 Pa.C.S. § 1818, deprives attorneys of their right to sue for defamation on a negligence standard for injuries to their reputation. The Department contends that 75 Pa.C.S. § 1818 is not applicable to the attorney reporting requirements of Subchapter C, as this section is found in Subchapter B of Act 6, and reads: "No person shall be subject to civil liability for libel, violation of privacy, or otherwise by virtue of the filing of reports or furnishing of other information in good faith and without malice, *required by this subchapter.*" However, the reporting requirement in Subchapter C, 75 Pa.C.S. § 1822(a), duplicates the Subchapter B requirement, and since Subchapter B requires that a copy of the report on suspected fraud be sent to the Index Bureau, it is likely that in reality only one report will be written and transmitted by the insurer. Consequently, an insurer filing a report with the Index Bureau under Subchapter C will be able to claim the protection of 75 Pa.C.S. § 1818. Were reputation not a fundamental right under the Pennsylvania Constitution, we believe PBA would be entitled to a review under the *Paul* "reputation-plus" standard.

unduly oppressive and that lacks the safeguards of procedural and substantive due process. We will first examine PBA's claims regarding the lack of procedural due process.

■■■ Where a right, such as the right of PBA members to preserve their reputations, is protected by the constitutional guarantee of procedural due process, the courts must balance the interests of the individual in procedural protections against the interests of the government in proceeding without protections to determine what due process requires. *Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 445–46, 370 A.2d 685, 698 (1977) (*Coal Mining*). We agree with PBA that the maintenance of a list which includes the names of attorneys representing insurance claimants suspected of fraud by the Index Bureau poses a serious threat to the reputations of PBA members through negative stigmatization, as discussed in *Wolfe*. Yet, disturbingly, the reporting requirements in 75 Pa.C.S. § 1822(b) pertaining to the anti-fraud reports provide for no notification to the attorneys when their names are listed in the Index Bureau's record banks.

The Supreme Court of the United States has recognized that notice is the most basic requirement of due process. *Coal Mining*, 471 Pa. at 452, 370 A.2d at 692, citing *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Notice is necessary both to inform the interested parties of the pending action and to provide an opportunity to present objections. *Coal Mining*, 471 Pa. at 452, 370 A.2d at 692–693. This lack of notice is a primary flaw in PMC's argument that PBA members have access to the remedy of expungement of the records in order to safeguard their reputations. The availability of expungement is of no use to attorneys who are not even aware that they are listed with the Index Bureau. An attorney may appear on the list, and be subject to negative stigmatization, because the insurer has a suspicion about the client due to previous actions unknown to the attorney. By the time the listing is brought to the attorney's attention, the damage to the attorney's reputation may have been done, and he or she

may have lost the opportunity to be heard "at a meaningful time and in a meaningful manner" as contemplated and recognized by the United States Supreme Court as a fundamental requirement of due process. *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

We find Section 1822 to be unconstitutional inasmuch as it requires the maintenance of records containing the names of attorneys who represent insurance claimants suspected of fraud because such a scheme ignores the basic due process requirement of notice, and permits the compilation of secret records that tend to unfairly stigmatize an attorney who is reported to the Index Bureau without any opportunity for the attorney to raise an objection to such listing, or even become informed that such a listing will occur.

### *Substantive Due Process and Equal Protection*

 PBA also argues that its members have been deprived of their rights to substantive due process and equal protection of the laws. Both the Fourteenth Amendment to the United States Constitution and Article I of the Pennsylvania Constitution prohibit the legislature from placing unjustified restrictions on individual rights.[8] The touchstone of both substantive due process and equal protection is whether the law in question is rationally related to a legitimate state goal, or whether the state action arbitrarily works to deny rights guaranteed to everyone. *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 70, 436 A.2d 147, 157 (1981). Where the right affected is fundamental, or the classification made by the law is suspect, strict judicial scrutiny is applied. *Klein v. State Employees' Retirement System,* 521 Pa. 330, 346, 555 A.2d 1216, 1224 (1989).

8. Article I, § 26 of the Pennsylvania Constitution provides:
 Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

■ We have previously determined that reputation is a fundamental right under the Pennsylvania Constitution, and that Subchapter C imposes a burden upon it by providing for the maintenance of reports that would damage the reputations of attorneys listed. Strict scrutiny requires that a statute which restricts a fundamental right must be justified by a compelling state interest and also be narrowly drawn to express only the legitimate state interests at stake. *Denoncourt v. State Ethics Commission*, 504 Pa. 191, 200, n. 8, 470 A.2d 945, 949, n. 8 (1983) (*Denoncourt*).

■ PBA contends that its members' rights to due process are purloined by Subchapter C's reporting requirements, and that their reputations will suffer injury based upon the arbitrary basis of when an insurer "suspects" a fraudulent claim. Although the Department states that all of the reporting requirements are necessary to assist the state in preventing insurance fraud, PBA contends that Subchapter C's reporting requirement will not assist in preventing insurance fraud but will result in unreliable reports based on unchecked and undisciplined suspicion.

The Department identifies the interest of the Commonwealth in eliminating insurance fraud as "significant." We do not deny that the elimination of fraud is a valid exercise of the police power, but such an exercise cannot deprive citizens of private rights in an arbitrary manner without a meaningful opportunity to be heard. *Hardee's Food Systems, Inc. v. Department of Transportation*, 495 Pa. 514, 519, 434 A.2d 1209, 1212 (1981). Here, the reporting requirements are designed to operate in an arbitrary manner, with undefined suspicion as the basis for reports and no system in place to evaluate them for veracity or probative value.

We note that in *Denoncourt*, the Pennsylvania Supreme Court determined that Sections 4, 5 and 9 of the Public Officials' Ethics Act [9] were unconstitutional insofar as they required candidates for public office to report financial

9. Act of October 4, 1978, P.L. 883, No. 170, §§ 4, 5, 9, *as amended,* 65 Pa.C.S. §§ 404, 405, 409.

transactions entered into by the candidates' family members. Our state Supreme Court reasoned that although some misbehavior might be discovered as a result of the family reporting requirements, all of the public officials' family members would have their privacy invaded. In the case before us, while some attorneys reported to the Index Bureau might actually be involved in submitting fraudulent claims, all of the attorneys reported will suffer an injury to their right to protect their reputations without benefit of due process. The Department makes no argument which justifies the broad sweep of the attorney reporting requirements. Consequently, we find the requirement that attorney names be reported on the basis of an undefined suspicion to be unconstitutional as a violation of substantive due process.

■■■ PBA also contends that the attorney reporting requirements restrict the rights of their members to equal protection under the law on the basis that the law creates classifications of "entities that must be reported to and listed by the Index Bureau, including 'attorneys representing claimants....'" PBA's Brief at 21.

As we have already determined that PBA is entitled to summary relief on the unconstitutionality of the attorney reporting requirements, the outcome of this case does not depend on our consideration of PBA's equal protection argument. After a full hearing PBA might also be entitled to summary relief on this issue. It is not per se violative of equal protection for the Commonwealth to treat different classes differently. *James v. Southeastern Pennsylvania Transportation Authority*, 505 Pa. 137, 144, 477 A.2d 1302, 1305 (1985). However, strict scrutiny of a classification is appropriate when the classification burdens a fundamental right. *James*, 505 Pa. at 145, 477 A.2d at 1306. Again, the state must have a compelling reason for making the classification which expresses only the legitimate state interests at stake. *Denoncourt.* Given that the state's objective, as framed by the Department and PMC, is to prevent insurance fraud, we find that neither the Department nor PMC

currently advances a persuasive argument why knowledge of the names of attorneys representing claimants suspected of fraud will assist in preventing insurance fraud. For the most part, attorneys do not pick and choose their clients and should not refuse to represent a client based upon an undefinable suspicion.

## *Vagueness*

PBA also contends that the reporting requirements of Subchapter C are unconstitutional because they are impermissibly vague. To satisfy constitutional requirements laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited," and, in order to prevent the evil of arbitrary enforcement, laws must "provide explicit standards for those who apply them." *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972). PBA contends that its members are unable to know what specific conduct is required to be reported; therefore, the members are unable to conform their behavior accordingly.

The Department argues that a vagueness analysis is inappropriate because the reporting requirements do not regulate lawyer conduct. The Department states that the reporting requirements only place burdens on insurance companies, and that the insurance companies are not before this Court complaining they do not know or cannot perform their role.

The purpose of a constitutional examination is to determine whether individual rights are infringed upon by the legislation in question, and this purpose cannot be thwarted by the legislature's delegation of decision-making authority to insurers outside of the governmental sphere. The Fourteenth Amendment of the United States Constitution requires that the states make no law abridging the rights of United States citizens, and it naturally follows that a state legislature is not free to make laws which require private parties to abridge the rights of those same citizens. Again, the state cannot insulate itself from infringing on the rights

of PBA members by creating an Index Bureau and having private insurance companies label claimants frauds based upon a suspicion, and their attorneys frauds by association and innuendo.

The Department cites federal court decisions which state that greater tolerance is accorded enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. *See Village of Hoffman Estates v. The Flipside, Hoffman Estates*, 455 U.S. 489, 498–499, 102 S.Ct. 1186, 1193–1194, 71 L.Ed.2d 362 (1982). However, these decisions do not imply that the legislature is given free reign to write imprecise laws to be arbitrarily imposed against citizens as long as criminal penalties are avoided. Although the Department contends that PBA has presented no evidence that insurers will utilize the reporting requirements in an abusive, discriminatory, or arbitrary way, it is evident that such abuse is unavoidable. The lack of legislative definition of what a "suspicion" must be based upon leaves the door open for imprecise and arbitrary reporting.

This law lacks any discernable standard for enforcement; under Subchapter C an attorney of ordinary intelligence does not possess a reasonable opportunity to know what is prohibited so that he or she may act accordingly, and those who must report are equally without guidance and explicit standards. Consequently, we find the reporting requirements of Subchapter C to be unconstitutionally vague.

### Other Constitutional Challenges

█ PBA also contends that the reporting requirements infringe impermissibly on its member's First Amendment right to free speech. However, PBA's argument fails precisely because of the vagueness which we have already discussed. Although PBA argues that the reporting requirements place a chilling effect on litigation, there is no indication that entering into litigation on an insurance claim will make it more likely that a particular attorney will be listed. The problem with this law is that there is no way to

370

determine when a reporter will classify a claim as a suspected fraudulent claim.

 PBA also argues that the reporting requirements violate the separation of powers mandated by the Pennsylvania Constitution between the legislature and the judiciary as an impermissible legislative encroachment upon attorney discipline. Although the PBA argues that being listed is analogous to an official censure, the reporting requirements do not indicate that the listing of an attorney will involve any sort of discipline.

In conclusion, we grant summary relief on the basis that the attorney reporting provisions of Subchapter C of Act 6 are unconstitutional because they deprive PBA members of the fundamental right to protection of their reputations without regard for due process and are unconstitutionally vague.

### ORDER

AND NOW, this 20th day of April, 1992, Petitioner Pennsylvania Bar Association's motion for summary relief is granted to the extent that the attorney reporting requirements contained at 75 Pa.C.S. § 1822(b)(5) are hereby declared unconstitutional based upon vagueness and violation of the due process rights of Pennsylvania Bar Association members.