**Donald N. GARNER, Jr., Plaintiff,**

v.

**TOWNSHIP OF WRIGHTSTOWN, et al., Defendants.**

Civ. A. No. 90–1228.

United States District Court, E.D. Pennsylvania.

April 16, 1993.

See also 136 F.R.D. 393.

436

Patricia V. Pierce, Philadelphia, PA, for plaintiffs.

William F. Holsten, II, Patricia Holsten, Holsten & White, Media, PA, Jill Carlin Schrager, Rawle & Henderson, Philadelphia, PA, Donald E. Wieand, Jr., Weaver, Mosebach, Piosa, Hixson & Marles, Allentown, PA, for defendants.

## MEMORANDUM

BRODY, District Judge.

In these motions for summary judgment on plaintiff's Section 1983 claims for violation

of his civil rights, I am being called upon to decide:

(1) Whether, in an action sounding in defamation, the long established precedent that injury to reputation alone is not actionable as a violation of the United States Constitution is abrogated by a provision of the Pennsylvania state constitution identifying reputation as a constitutionally protected interest? I find that it is not.

(2) Whether there is any constitutionally protected privacy interest against disclosure that plaintiff's business operations were the subject of a police and grand jury investigation? I find that there is not.

(3) Whether the plaintiff's agreement with the township to tow abandoned and disabled vehicles for the township police department on alternating weeks was a constitutionally protected entitlement invoking the right to a hearing under the due process clause of the Fourteenth Amendment prior to termination of the towing privileges by a township police chief? I find that it was not.

(4) Whether the plaintiff can maintain a cognizable Section 1983 "malicious prosecution/abuse of process" claim against defendants for initiating and conducting a grand jury investigation of his business operations when he has not identified any facts establishing any process such as arrest or the filing of criminal charges? I find that he cannot.

Before me are three motions for summary judgment on plaintiff's claims under 42 U.S.C. § 1983 for violation of his civil rights filed, respectively, (1) by the collective "Wrightstown defendants" (Township of Wrightstown, the township Board of Supervisors, Ken Cronlund, George Donat, Eric Curtis, Chester Poganowski, and the Wrightstown Township Police Department); (2) by defendant Walter Hughes ("Chief Hughes"); and, (3) by the collective "Bucks County defendants" (Alan Rubenstein, Dale Reichley, William Brosha, Harry Armitage, and the Bucks County District Attorney's Office).

## I. STATEMENT OF MATERIAL FACTS

In February of 1988, plaintiff Donald Garner ("Mr. Garner") owned and operated a Bucks County car repair shop and used car parts dealership known as Wrightstown Auto Body and Wrightstown Auto Parts. For approximately 15 or 16 years prior to 1988, Mr. Garner had an informal, unwritten arrangement with Wrightstown Township to tow all abandoned or disabled vehicles for the local police on alternating weeks. (Garner depo. at 98–99; 165–67). Mr. Garner, who testified that he had a "60 or 70 percent chance of repairing" any cars towed pursuant to his agreement with the township, characterized the township towing arrangement as a significant source of business, and indeed, as his "livelihood." (*Id.* at 99, 167). Mr. Garner testified that he had no understanding about "staying on the [township towing] list" or the circumstances under which the agreement could be terminated. (Garner depo. at 165–66).

During the summer of 1987, Mr. Garner asked his friend Brian Puricelli ("Officer Puricelli"), a part time Wrightstown Township police officer, to help his business obtain the state salvor's license required for "processing"—or salvaging—towed vehicles abandoned by their owners. (Garner depo. at 31–35). Prior to obtaining the license, Mr. Garner simply stored the abandoned vehicles on the premises. (*Id.*).

After Mr. Garner obtained the salvage license, Officer Puricelli approached Walter Hughes ("Chief Hughes"), then the chief of the Wrightstown Township police department, who gave Officer Puricelli permission to set up and maintain an abandoned vehicle and towing file for the Wrightstown police department. (Hughes depo. at 103–04; Brosha depo. at 50). Officer Puricelli then created and organized Mr. Garner's filing system for automobile abandonment procedures. (Puricelli depo., "second day," at 71). Officer Puricelli refused any compensation for his help in setting up Mr. Garner's files. (Garner depo. at 97).

*A. Material facts underlying the motions for summary judgment by the Wrightstown defendants and Chief Hughes.*

Mr. Garner's Section 1983 action against Chief Hughes arises from an investigation of

his towing and salvage operations. Mr. Garner claims that the investigation was initiated to retaliate against Officer Puricelli who had reported improper conduct by Chief Hughes to the township supervisors.[1] Mr. Garner also claims the Wrightstown defendants "ratified" Chief Hughes' acts and conduct by failing and refusing to take any action to stop the improper investigation, thereby acting with deliberate indifference to the violation of Mr. Garner's constitutional rights. (*See* plaintiff's second amended complaint).

According to Mr. Garner's version of the facts, Chief Hughes first approached Mr. Garner to demand his abandoned car records the day after the Chief learned about Officer Puricelli's complaint to the board of supervisors. (*See* Hughes depo. at 132; Garner depo. at 52–53). Mr. Garner testified that Chief Hughes first approached Mr. Garner's niece, an employee at the business, for the records and that she referred him to Officer Puricelli; Chief Hughes subsequently contacted Mr. Garner on at least three occasions to demand Mr. Garner's abandoned car records, but Mr. Garner refused because Chief Hughes would not tell him why he wanted the records. (Garner depo. at 50, 52, 58, 183–86).

On February 23, 1988, Chief Hughes hand delivered a letter to Mr. Garner revoking his township towing privileges because Mr. Garner would not cooperate in his investigation. (Garner depo. at 69–70). Four days later, Chief Hughes telephoned Mr. Garner to advise him that his towing privileges were being reinstated; Mr. Garner testified that he responded that he did not want to be reinstated: "I was probably a little nasty and upset." (Garner depo. at 174–75). At his deposition, Mr. Garner could not recall whether he was the township's designated tower during the week of February 23, 1988. (*Id.* at 193).

By letter dated March 19, 1988, Mr. Garner, through his attorney, officially requested reinstatement of his township towing privi-

leges; the privileges were restored by letter from Chief Hughes dated March 24, 1988. (Garner depo. at 102–04, 175–77). Mr. Garner testified that township supervisor Ken Cronlund, one of the Wrightstown defendants, told him that he directed Chief Hughes to reinstate him because his towing privileges could not be revoked on the mere accusation that Mr. Garner was running a "chop shop". (Garner depo. at 102–104; 193).

### B. Material facts underlying the motion for summary judgment by the Bucks County defendants.

Mr. Garner's Section 1983 claims against the Bucks County defendants arise from the Bucks County district attorney's office's investigation of his business operations commencing when Chief Hughes turned his investigation over to that office. Mr. Garner alleges that Chief Hughes—and, by their "ratification," the Wrightstown defendants—are also liable for the conduct of the Bucks County defendants because of the chief's "conspiracy" with the district attorney's office "to destroy his reputation and livelihood in Bucks County without probable cause". (*See* plaintiff's second amended complaint).

On March 1, 1988, defendant William Brosha ("Detective Brosha"), a detective in the Bucks County District Attorney's office, interviewed Chief Hughes. Detective Brosha summarized the content of this interview in a report of the same date ("the Brosha report"). The Brosha report states that the police department's internal investigation "led [Chief Hughes] to suspect the possibility of unlawful conduct by PURICELLI & GARNER using the Wrightstown Police Department." Chief Hughes also reported that his own efforts to conduct an investigation were unsuccessful: "DONALD GARNER, when questioned by CHIEF HUGHES, at first referred all questions by HUGHES to PURICELLI, and then refused further in-

---

1. By opinion of this same date, I am ruling on the defendants' motions for summary judgment in the related action *Puricelli v. Township of Wrightstown et al.*, C.A. 89–9161, which was consolidated with this case for purposes of discovery and trial by Judge DuBois on August 6, 1990. I am incorporating certain material facts set forth at length in that opinion that are co-extensive with the material facts in Mr. Garner's case—in particular, the facts of the underlying dispute between Officer Puricelli and Chief Hughes.

terview by HUGHES, telling CHIEF HUGHES that he was ·not going to talk to HUGHES on the advice of his attorney."

Defendant Assistant District Attorney Dale Reichley ("Mr. Reichley") testified that the district attorney's office will investigate "police officers' conduct when a chief brings it to us, questioning that police officer's conduct. We will take a look because we are better and more impartially suited to do the investigation." (Reichley depo. at 134). Because both Officer Puricelli and Mr. Garner refused to cooperate with Chief Hughes and referred him to their attorneys, the district attorney's office "felt we had a reasonable suspicion or reasonable basis to look into further and investigate Puricelli. We went on from that." (*Id.*). At their depositions, the Bucks County detective defendants testified that Mr. Garner was not the target of the ensuing investigation. (Brosha depo. at 51; Armitage depo. at 8–9, 12).

According to Mr. Garner's version of the facts, he fully cooperated with the district attorney's investigation. Mr. Garner and his attorney met with Detective Brosha and defendant Detective Harry Armitage ("Detective Armitage") in their office at the Bucks County courthouse, bringing with them Mr. Garner's abandoned car records in response to the district attorney's subpoena. (Garner depo. at 74–78, 111; Kerrigan letter of July 6, 1988). Mr. Garner testified that the detectives accused him of perjury when he refused to admit their "untrue" allegations that he was paying Officer Puricelli to "abandon" vehicles for him; he also testified that he was told that "[y]ou are not a target of an [grand jury] investigation, but if you don't give us the answers that we want, you could be a target." (*Id.* at 75–83).

The district attorney's office continued the investigation for approximately one year. (Reichley depo. at 104). The district attorney's office retained Mr. Garner's original records until April 12, 1989 despite his attorney's request for their return nine months earlier. (Kerrigan letter of July 6, 1988; Armitage report of April 12, 1989). Mr. Garner has submitted the affidavits of various individuals—including owners of vehicles involved in the investigation, local service station operators, and local police officers— who were interviewed by defendants Brosha, Armitage, Hughes and Reichley. during the investigation. Each of these individuals attests that, during the interview, the defendants either referred to the "Wrightstown chop shop" or implied or directly stated that Mr. Garner was suspected of salvaging stolen cars. (Affidavits of Joe Ronzono, James O'Neill, William Gallagher, Robert Cressman, Thomas Halpin, Martin· Duffy, and Lynn Maddy).

Although some evidence was presented to the grand jury, the district attorney's office did not seek a presentment against Officer Puricelli or Mr. Garner and it did not make a public report of the grand jury investigation. (Reichley depo. at 135–36). Mr. Reichley testified that, at a meeting with Detectives Brosha and Armitage and defendant District Attorney Alan Rubenstein, he recommended that there was insufficient evidence to convict Officer Puricelli of criminal conduct. (*Id.* at 136). The investigation was closed in 1989 without prosecution of either Officer Puricelli or Mr. Garner. · (*Id.* at 138; *see also* Brosha depo. at 20; *see also* Armitage report of April 12, 1989).

Mr. Garner testified that, in 1990 and 1991, the years immediately following the investigation, he probably made more money than he had in prior years. (Garner depo. at 155).

## II. DISCUSSION.

### A. *Standards for summary judgment.*

■ To succeed on a motion for summary judgment, the moving party must establish that no genuine issues of material fact remain in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party; a factual dispute is "material" if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding whether the standards for summary judgment have been met, the evidence must be viewed in the light most favorable to the non-moving party.

*Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Invest.*, 951 F.2d 1399, 1404 (3rd Cir.1991).

I am sympathetic to Mr. Garner's position and in no way intend to minimize his frustration and anxiety when he became embroiled in the dispute between Officer Puricelli and Chief Hughes. Nonetheless, Mr. Garner has identified no facts to support his claim that the acts and conduct of the defendants deprived him of any constitutionally protected right. Therefore, viewing the facts in the light most favorable to plaintiff, there are no disputed "material" facts that might affect the outcome of this case under the governing law.

I am hard pressed to identify the factual basis for Mr. Garner's claim, as alleged, that defendants violated his rights "as secured by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and constitute a violation of Title 42 U.S.C. Section 1983." (*See* plaintiff's second amended complaint.)[2] Mr. Garner was never arrested and charged with running a "chop shop" and was not even the primary target of the police or grand jury investigations. Likewise, Mr. Garner was never charged with perjury despite his testimony that he was threatened with perjury charges by the Bucks County defendants. He was never subject to any search or seizure, proper or improper, and admits that he turned over his business records in compliance with a subpoena. Mr. Garner's counsel was present during his interview by the detectives in the district attorney's office. Although his towing privileges were briefly suspended, there are no facts to show that defendants ever made any attempts to place his state salvor's license in jeopardy.

After the defendants moved for summary judgment, Mr. Garner restated his Section 1983 claims by asserting that his civil rights, as guaranteed by the United States Constitution, were violated by (1) the defendants' tortious damage to his reputation, *e.g.*, that he was defamed, (2) the defendants' tortious invasion of his privacy, (3) the termination of his towing privileges without a hearing, and (4) defendants' abuse of process. (*See* Mr. Garner's response to the Bucks County defendants' motion for summary judgment at p. 4, to the Wrightstown defendants' motion for summary judgment at pp. 2, 10, and to Chief Hughes' motion for summary judgment, generally.) In his responsive briefs, Mr. Garner identified sufficient facts for a reasonable jury to conclude that he was subjected to aggravation and agitation during the course of the ultimately fruitless investigation and that, during the course of the investigation, Chief Hughes and the Bucks County defendants maligned his reputation by making baseless statements to third parties implicating him in illegal conduct. The various defendants have raised both absolute and qualified immunity defenses.

■ Comporting with the directive of *Siegert v. Gilley*, —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), I begin my analysis by determining whether plaintiff has identified any facts on which he can assert a cognizable Section 1983 claim for relief. Although it is conceivable that these same facts might give rise to one or more state law causes of action, these facts do not give rise to any claim that defendants violated any recognized constitutionally protected right. Because the federal constitution is not intended to serve as a font of tort law creating remedies for private citizens against state action in the absence of a violation of a specific constitutional safeguard, *see, e.g., Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), I must enter summary judgment in favor of defendants and against plaintiff on his Section 1983 claims.

B. *The defendants did not injure any constitutionally protected interest in plaintiff's reputation when they made statements implicating him in activities under police grand jury investigation.*

Mr. Garner first contends that, by making statements referring to the "Wrightstown

---

**2.** On February 19, 1991, Judge Van Antwerpen denied the Bucks County defendants' motion to dismiss without prejudice to the right to move for summary judgment at the completion of discovery. The case was transferred to me on January 12, 1993.

chop shop" and implicating him in the activities under investigation, the defendants defamed him, thereby injuring a constitutionally protected interest in his reputation. Mr. Garner argues that reputation is a fundamental liberty interest shielded by procedural due process protections—an argument that plaintiff predicates on *Paul v. Davis, supra,* which held that the federal constitution does not extend protection to an individual's reputation alone in the absence of other "tangible" injuries or damages. 424 U.S. at 712, 96 S.Ct. at 1166 (reputation alone, no matter how seriously harmed, does not implicate any "liberty" or "property" interests protected by the due process clause); *see also Siegert v. Gilley, supra,* —— U.S. at ——, 111 S.Ct. at 1794.

■ In an attempt to differentiate the result in *Paul,* which rejected a federal civil rights action for reputation injuries because the highest protection accorded reputation under Kentucky law was a tort action for defamation, Mr. Garner seizes upon the language of Article I § 1 of the Pennsylvania Constitution to argue that, under Pennsylvania law, injury to reputation alone is a cognizable violation of a liberty interest secured by the federal constitution because "reputation is a fundamental right shielded by due process protections ..." under the Pennsylvania state constitution. (Plaintiff's response to Chief Hughes' motion for summary judgment at p. 8.)[3] This creative argument has been considered and rejected in another decision from this district in *Lee v. Mihalich,* 630 F.Supp. 152, 155 (E.D.Pa.1986).

Numerous decisions from this circuit have held that a cognizable Section 1983 cause of action does not arise where a defendant has defamed the plaintiff and injured his reputation in the absence of other damages. *See, e.g., Kulwicki v. Dawson,* 969 F.2d 1454, 1468 (3rd Cir.1992); *Clark v. Township of Falls,* 890 F.2d 611, 619–620 (3rd Cir.1989); *Robb v. City of Philadelphia,* 733 F.2d 286, 294 (3rd Cir.1984); *Defeo v. Sill,* 810 F.Supp. 648, 657 (E.D.Pa.1993); *Sergio v. Doe,* 769 F.Supp. 164, 166 (E.D.Pa.1991); *cf. Sturm v. Clark,* 835 F.2d 1009, 1012–13 (3rd Cir.1987) (there is no protected interest in reputation which would give rise to a Fifth Amendment claim against federal prison officials and injury to plaintiff's reputation would be actionable only under Pennsylvania state defamation law). Just last year, in *Lahaza v. Azeff,* 790 F.Supp. 88, 93 (E.D.Pa.1992), the court rejected the plaintiffs' Section 1983 claim for reputation injuries caused by public knowledge of a criminal investigation: "This theory would render virtually every criminal investigation actionable, under § 1983, if the public somehow became aware of it. This is clearly not what was intended by Congress in the drafting of 42 U.S.C. § 1983."

My ruling today should not be interpreted that I foreclose the possibility that the reference to "reputation" in the Pennsylvania state constitution could ever serve as a "liberty" interest invoking the protections of procedural due process. As noted by Gerald

---

**3.** Article I § 1 provides, in pertinent part, that "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property *and reputation,* and of pursuing their own happiness." (Emphasis added.) Plaintiff argues that I should allow the reputation claim to proceed even in the absence of other damages because Pennsylvania state courts have held that reputation enjoys heightened protections as a fundamental interest under the state constitution. Plaintiff relies on *Hatchard v. Westinghouse Broadcasting Co.,* 516 Pa. 184, 532 A.2d 346 (1987), which held that the Pennsylvania Shield Law was not an absolute shield protecting all of a publication's information from discovery in a defamation claim because of the heightened protections to a plaintiff's reputation, and *Pennsylvania Bar Ass'n v.*

*Commonwealth of Pennsylvania,* 147 Pa.Cmwlth. 351, 607 A.2d 850, 856 (1992), which declared a state vehicle code amendment requiring reporting of suspected fraudulent claimants and their attorneys to be unconstitutional because, among other reasons, reputation was a fundamental right "which cannot be deprived without compliance with state constitutional standards of due process and equal protection."

However, as plaintiff acknowledges by his citation to *Bargerstock v. WGCAC,* 397 Pa.Super. 403, 580 A.2d 361 (1990), *appeal denied,* 529 Pa. 655, 604 A.2d 247 (1992), in his brief, the Pennsylvania Superior Court reversed a state trial court's failure to grant defendant's motion for judgment notwithstanding the jury verdict for plaintiff on a Section 1983 claim because the plaintiff failed to prove "reputation plus" damages required by *Paul v. Davis* to maintain a Section 1983 federal civil rights claim.

Gunther in his discussion of *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) [4] in his casebook *Constitutional Law* (12th ed. 1991 at pp. 594–598), an "objective expectation, firmly fixed in state law and [official] practice" could give rise to a liberty interest protected by the Due Process clause. *Vitek* and *Pennsylvania Bar Ass'n v. Commonwealth of Pennsylvania,* 147 Pa.Cmwlth. 351, 607 A.2d 850 (1992),[5] the Commonwealth Court decision relied upon by plaintiff, both found a protected liberty interest that precluded stigmatization by ex parte adjudications—the very type of action which troubled the dissent in *Paul v. Davis.*

By contrast, Mr. Garner's claim is nothing more than a state defamation action masquerading as a Section 1983 claim. The facts, when viewed most favorably to him, are simply that untrue statements were made about him. There are no facts to establish that these untrue statements in any way effectuated an official judgment or even a change in his status. It is axiomatic that a judgment or a change of status—the very element lacking in this case—is necessary to invoke due process protections of notice and a hearing *prior* to the judgment or change in status. In the absence of this critical element, the singular fact that these statements were made by local officials does not elevate a defamation claim to constitutional status under federal law for purposes of Section 1983 liability. Moreover, in light of the Superior Court's decision in *Bargerstock v. WGCAC,* 397 Pa.Super. 403, 580 A.2d 361 (1990), *appeal denied,* 529 Pa. 655, 604 A.2d 247 (1992), it is apparent that, in the absence of this element, a defamation claim is not elevated to constitutional status under the state constitution for purposes of Section 1983 liability.

■ Suffice it to say, if Mr. Garner had been able to prove "reputation plus" damages to meet the standards of *Paul v. Davis,* today's result might have been different. The "termination" of his township towing privileges did not constitute "reputation plus" damages both (1) because, viewing the facts in the light most favorable to plaintiff, Chief Hughes revoked the privilege to retaliate for Mr. Garner's failure to cooperate in the investigation and not because he believed that Mr. Garner was operating a "chop shop," and (2) because Mr. Garner did not have a constitutionally protected interest in the towing privilege (*see also* Section D, *infra,* of this memorandum). Furthermore, not only has Mr. Garner failed to establish that he suffered any monetary or professional damages because of the remarks made during the investigation, he admits that his business continued to prosper, and, indeed, that he "probably" earned more money in the years immediately following the investigation. Because Mr. Garner cannot identify any evidence of any "reputation plus" damages, I will enter summary judgment on defendants' motions for summary judgment as to Count I of plaintiff's second amended complaint in so far as it states a Section 1983 claim for tortious damage to reputation.

C. *Plaintiff did not have a constitutionally protected privacy interest against disclosure that his business operations were under police and grand jury investigation.*

Although Mr. Garner contends that it was a constitutional invasion of his privacy for the defendants to reveal that he was implicated in the investigation, he fails to address the parameters of the constitutionally protected privacy interest and relies, instead, on the elements of a Pennsylvania tort for invasion of privacy. (*See* response to the Bucks County defendants' motion for summary judgment at pp. 8–10 and to the Wrightstown defendants' motion for summary judgment at pp. 5–7.) In *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–877, 51 L.Ed.2d 64 (1977), the United States Supreme Court recognized a constitutionally protected privacy interest in the right to be free from interference in making certain kinds of important

---

4. In *Vitek,* the Supreme Court held that the involuntary transfer of a prisoner to a mental hospital implicated a liberty interest invoking procedural due process protections. 445 U.S. at 491–97, 100 S.Ct. at 1262–66.

5. *See* page 441 of this memorandum at footnote 3.

personal decisions (the autonomy branch). The *Whalen* Court also recognized a constitutionally protected privacy interest in the right against disclosure of personal matters (the confidentiality branch).

Because Mr. Garner asserts his claim under the confidentiality branch, my first inquiry is whether the type of information disclosed—the fact that Mr. Garner's business operations were implicated in a police and grand jury investigation—is the type of "private" information protected by the constitution. *See Scheetz v. The Morning Call, Inc.,* 946 F.2d 202, 206 n. 5 (3rd Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1171, 117 L.Ed.2d 417 (1992). I find that it is not.

■ The fact that an individual is the subject of a police or grand jury investigation is, by its nature, the type of public information in which a plaintiff does not have a federally protected privacy interest. *See, e.g., Paul v. Davis, supra,* (publication of arrest does not implicate constitutional privacy rights); *Scheetz v. The Morning Call, Inc., supra,* (information in a police report is not protected by constitutional right to privacy); *Trade Waste Management Ass'n Inc. v. Hughey,* 780 F.2d 221, 234 (3rd Cir.1985) (disclosure of criminal convictions and pending criminal charges not protected and any expectation of privacy in the conduct underlying the charges has never been "reenforced" by law). *Compare Fraternal Order of Police, Lodge No. 5 v. Philadelphia,* 812 F.2d 105 (3rd Cir.1987) (there is no absolute protection against disclosure of constitutionally protected medical information if government's interest in disclosure outweighs individual's privacy interest); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570 (3rd Cir.1980) (same).

■ Here, regardless of whether the investigation was *properly* initiated, it *was* initiated and, thus, any disclosures fell within the ambit of public information in which Mr. Garner did not have a constitutional privacy interest. Indeed, in his briefs, Mr. Garner relies on state tort law as the basis of his claim. Whether or not plaintiff could succeed on a state cause of action for invasion of privacy is irrelevant to this claim for violation of a constitutional privacy right. *Scheetz v.*

*The Morning Call, supra,* 946 F.2d at 206–207 (citing *United States Dept. of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)); *Jones/Seymour v. LeFebvre,* 781 F.Supp. 355, 358 (E.D.Pa.1991), *aff'd,* 961 F.2d 1567 (3rd Cir.1992). Because disclosure that an individual is implicated in a police or a grand jury investigation does not violate a constitutionally protected privacy interest, I will enter summary judgment on defendants' motions for summary judgment as to Count I of plaintiff's second amended complaint in so far as it states a Section 1983 claim for tortious invasion of privacy.

D. *The revocation of Mr. Garner's towing privileges did not invoke the procedural due process protections of the constitution.*

■ Mr. Garner also alleges that Chief Hughes and the Wrightstown defendants deprived him of his constitutional right to procedural due process under the Fourteenth Amendment when Chief Hughes revoked his towing privileges without a hearing. In order to succeed on this claim, Mr. Garner must establish that he had a constitutionally protected interest in his informal, unwritten towing agreement with the township. I find that he did not.

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law ...'". *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 539, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (*quoting Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). "To have a property interest in a benefit, a person clearly must have ... a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

For example, the United States Supreme Court has found that a civil service job is a constitutionally protected property interest mandating full due process protections of notice and a fair hearing prior to dismissal. *Loudermill, supra.* Likewise, there is a pro-

tected entitlement to welfare benefits requiring notice and a hearing before the benefits can be terminated. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). By comparison, because a one year non-tenure employment contract did not create a constitutionally protected property interest, an assistant professor at a state university was not entitled to a hearing under the due process clause when his contract was not renewed. *Board of Regents v. Roth, supra.*

Mr. Garner relies on the Supreme Court's decision in *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), to argue that his towing agreement with the township was an entitlement invoking the full panoply of procedural due process protections under the Fourteenth Amendment. In *Bell,* the Court held that the state could not suspend an issued driver's license without procedural due process required by the Fourteenth Amendment. In his brief, Mr. Garner, who testified that the towing agreement was his "livelihood", seizes upon on the Court's statement in that case that "[o]nce licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood," *id.* at 1589, to attempt to persuade me that I should follow *Bell* and find a constitutional entitlement in this case.

I see no analogy that can been drawn between *Bell* and the facts of this case. If Mr. Garner's state salvor's license had been suspended or revoked, I would be inclined to agree that *Bell* would apply. However, granting every possible favorable inference to the non-moving party, Mr. Garner had, at best, nothing more than a garden variety contract [6] with the township and not a constitutionally protected entitlement; therefore, the termination of the agreement, at most, could give rise to a claim for breach and not for deprivation of a constitutional right.

Indeed, this procedural due process claim trivializes the protections extended by the Constitution. Mr. Garner shares responsibility with the moving defendants for any losses suffered by his business during the brief

interlude during which his towing privileges were suspended. He admitted that he refused Chief Hughes' offer to restore his towing privileges four days after they were terminated and that he could not recall whether he was the township's designated tower during the intervening four days. Moreover, the towing privileges were restored on March 24, 1988, one month after being terminated, after Mr. Garner made a formal request for reinstatement as a township towing agent. Therefore, I will grant defendants' motion for summary judgment as to Count II of plaintiff's second amended complaint.

E. *Mr. Garner cannot maintain a Section 1983 claim for "abuse of process/malicious prosecution" against defendants for initiating and conducting a grand jury investigation of his business operations because he has not identified any facts establishing any process such as arrest or the filing of criminal charges that deprived him of a constitutionally protected liberty interest without due process of law.*

Finally, both Counts I and III of plaintiff's complaint apparently allege that defendants' abuse of process violated Mr. Garner's constitutionally protected rights. I find that Mr. Garner has not stated a cognizable Section 1983 "malicious prosecution/abuse of process" claim as alleged in the second amended complaint.

■ Plaintiff is correct that viable actions for malicious prosecution and malicious abuse of process can be maintained under Section 1983. *See Losch v. Borough of Parkesburg,* 736 F.2d 903, 907–08 (3rd Cir.1984); *Jennings v. Shuman,* 567 F.2d 1213, 1220 (3rd Cir.1977); *Brown v. Johnston,* 675 F.Supp. 287 (W.D.Pa.1987). "State tort claims do not necessarily constitute a claim under § 1983 but state law torts for false arrest, abuse of process, and malicious prosecution may under some circumstances also provide the basis for a claim under the section." *Mines v. Kahle,* 557 F.Supp. 1030, 1039 n. 5 (W.D.Pa.

---

**6.** I would have difficulty finding that Mr. Garner had a towing contract with the township on the

facts in this case.

1983) (The Third Circuit's decision in *Kulwicki v. Dawson*, 969 F.2d 1454 (3rd Cir. 1992), disagreed with the *Mines* decision on the issue of absolute immunity.)

One commentator has noted, "[b]y now it is abundantly clear that common law torts committed by local governments or government employees do not, on that basis alone, constitute Fourteenth Amendment violations actionable under § 1983. Thus, strictly speaking, it is incorrect to talk about a malicious prosecution or abuse of process action premised solely on state tort law elements. Rather, what must be identified in every § 1983 case, including these, is the constitutional provision allegedly violated." S. Nahmod, *Civil Rights and Civil Liberties Litigation* § 3.15 (3rd ed. 1991).

Plaintiff has correctly cited *Losch v. Borough of Parkesburg*, 736 F.2d 903 (3rd Cir. 1984), as authority that a malicious prosecution claim is actionable under Section 1983. In *Losch*, the district justice dismissed criminal charges filed against plaintiff. The court held (1) that "the filing of criminal charges without probable cause and for reasons of personal animosity is actionable under § 1983" and (2) that the filing of criminal charges to penalize the plaintiff for exercising his First Amendment right to criticize the performance of public officials was a cognizable constitutional deprivation. *Id.* at 907–08.

In *Jennings v. Shuman*, 567 F.2d 1213, 1218 (3rd Cir.1977), the Third Circuit held that abuse of process was actionable under Section 1983 in the context of a grand jury investigation where the defendants made extortion demands on plaintiff *after* initiating process against him. The court found that plaintiff's constitutionally protected liberty interest was violated by the defendants' conspiracy to arrest him pursuant to a falsely sworn criminal complaint in order to effectuate the extortion: "Such deprivations without

[procedural] due process state an injury actionable under section 1983." *Id.* at 1220.

 Viewing the facts in the light most favorable to Mr. Garner, there is no dispute that, at the very least, Mr. Garner's business operations were the subject of the investigation despite the testimony of the Bucks County detectives that he was not the "primary target" of the grand jury investigation. Nonetheless, his claim fails for two reasons.

First, the "process" against Mr. Garner consisted of one interview, with his attorney present, and the production of his business records pursuant to a subpoena. Unlike the plaintiff who stated a viable Section 1983 malicious prosecution claim in *Losch*, there was no dismissal of a criminal complaint against Mr. Garner. Moreover, unlike the plaintiff who stated a viable Section 1983 abuse of process claim in *Jennings*, no criminal charges were ever brought against Mr. Garner and he was never arrested.

Second, Mr. Garner has failed to establish that he was deprived of a constitutionally protected interest by the investigation. At best, Mr. Garner makes an untenable claim that the grand jury investigation deprived him of a liberty interest in his reputation. (*See* response to the Bucks County defendants' motion for summary judgment at p. 20 and to Chief Hughes' motion for summary judgment at p. 13.)

Because Mr. Garner has failed to identify any facts establishing any violation or deprivation by the grand jury investigation of a constitutionally protected liberty interest invoking the due process clause, I will grant defendants' motions for summary judgment as to Count I, in so far as it states a Section 1983 claim for "malicious prosecution/abuse of process", and Count III of plaintiff's second amended complaint.[7]

---

**7.** Although it does not include a count specifically asserting a conspiracy claim, Mr. Garner's second amended complaint also alleges that the defendants "conspired" to deprive him of his constitutionally protected rights. (*See* second amended complaint at ¶¶ 22—24.) "Section 1983 does not create a cause of action *per se* for conspiracy to deprive one of a constitutional right. Without an actual deprivation, there can be no liability under Section 1983." *Defeo v. Sill*, 810 F.Supp. 648, 658 (E.D.Pa.1993); *see also Dixon v. City of Lawton, Okl.*, 898 F.2d 1443, 1449 (10th Cir.1990).

F. *Conclusion.*

For the foregoing reasons, I will grant the summary judgment motions of the Wrightstown defendants, Chief Hughes, and the Bucks County defendants and enter judgment against plaintiff and in favor of defendants on all Section 1983 claims against defendants set forth in plaintiff's second amended complaint. Pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over plaintiff's state law claims alleging violations of plaintiff's rights under the Pennsylvania state constitution and dismiss Count IV of plaintiff's second amended complaint without prejudice to his right to re-file in the state court. An appropriate order follows.

### ORDER

AND NOW, this 16th day of April, 1993, upon consideration of the defendants' motions for summary judgment and plaintiff's responses thereto and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. the motion for summary judgment of defendants Wrightstown Township, Board of Supervisors of Wrightstown Township, Eric Curtis, Chester Poganowski, Ken Cronlund, George Donat, and the Wrightstown Township Police Department is granted and judgment is entered in favor of defendants and against plaintiff on all Section 1983 claims set forth against defendants in the second amended complaint;

2. the motion for summary judgment of defendant Walter Hughes is granted and judgment is entered in favor of defendant and against plaintiff on all Section 1983 claims set forth against defendant in the second amended complaint;

3. the motion for summary judgment of defendants Alan Rubenstein, Dale Reichley, William Brosha, Harry Armitage, and the Bucks County District Attorney's Office is granted and judgment is entered in favor of defendants and against plaintiff on all Section 1983 claims set forth against defendants in the second amended complaint.

Pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over any state law claims and dismiss Count IV of the second amended complaint without prejudice to his right to file an action for these claims in state court. [*See* 28 U.S.C. § 1367(d), that the claim should be filed in the state court within thirty (30) days.]