580 A.2d 361

Ann BARGERSTOCK, Appellee,

v.

WASHINGTON GREENE COMMUNITY ACTION CORPORATION and John Wilson, Appellants.

Superior Court of Pennsylvania.

Argued March 21, 1990.

Filed Sept. 7, 1990.

James E. Kennedy, Pittsburgh, for appellants.

William M. Radcliffe, Uniontown, for appellee.

Before CAVANAUGH, DEL SOLE and HUDOCK, JJ.

DEL SOLE, Judge.

Ann Bargerstock, Appellee, was awarded $300,000 in compensatory and punitive damages against Washington–Greene Community Action Corporation (WGCAC) and John Wilson, Appellants, after a jury found that WGCAC and Wilson had defamed her and had violated her civil rights. WGCAC and Wilson appeal raising five issues. We reach the first three issues and reverse and remand for a new trial.

Bargerstock was employed as the manager of the transportation section of WGCAC, a non-profit organization engaged in community service activities including day care, head start centers and the transportation of elderly and low income people. Bargerstock was responsible for the receipt and deposit of monies collected from people who received transportation from the program. She was also responsible for monthly reports on the amount of money received and deposited. Carolyn Ross was Bargerstock's secretary in this department.

From June, 1986, to September, 1986, no monthly reports were made by Bargerstock's department to the fiscal office of WGCAC. The fiscal office was made up of John Patterson, fiscal supervisor and procurement officer, and August Stash, fiscal officer. After the third missing report, Stash notified Patterson. In August, 1986, Patterson notified Wilson, the executive director of WGCAC, that no money had been deposited in the transportation account for that month. Patterson also told Wilson that Bargerstock had told him that there were reports and money submitted for filing. Patterson continued to have problems in getting reports from Bargerstock's department. Wilson told Patterson that if the problems persisted he should contact James Ealy, the operations manager and Bargerstock's supervisor.

After the four missing monthly reports were submitted, Wilson, Patterson and Ealy discovered that the records did not conform to the bank records. Although deposit slips indicated that money had been deposited into the account, no money had actually been deposited. The bank which held the WGCAC account was of the opinion that the slips were forgeries. Stash, Wilson and Ealy met and determined that the only people who had access to the money involved in the transactions were Bargerstock and Ross. Wilson alerted the president of the WGCAC board of the situation and it was decided that meetings should be held with Bargerstock and Ross separately. If no one admitted

guilt after the meetings then the matter would be turned over to the district attorney.

Separate meetings were held with Bargerstock and Ross on December 19, 1986. Present at the meetings were Joan Owens, deputy executive director of WGCAC, Stash and Ealy. At Ross' meeting a union steward was also present since she was a union member. Neither Ross nor Bargerstock admitted responsibility for the missing funds. The matter was handed over to the district attorney and both women were suspended without pay. Ralph Eisiminger, an employee in Bargerstock's department was told about the suspensions by Ealy. Within two months Ross was reinstated because Bargerstock had become the focus of the investigation.

Criminal charges were filed against Bargerstock. Soon after that, new evidence was discovered by the police which turned suspicion toward Ross and led to her confession. Charges were then dropped against Bargerstock and she was returned to her former position at her former rate of pay. Her suspension lasted four and one-half months. During this time, the local newspaper ran three small stories about the situation at WGCAC. The only article which mentioned Bargerstock's name was an article about this defamation lawsuit.

 In her complaint against WGCAC, Bargerstock alleged that she was defamed when WGCAC and Wilson told members of the police department that Bargerstock took the missing funds; told members of a "Pereinatal Task Force" that Bargerstock was guilty; told a PennDOT funding representative that Bargerstock was suspended because of a work-related impropriety; told various employees of WGCAC that Bargerstock was guilty and that Ross was suspended only as a formality; told newspaper reporters that two staff members were suspended in connection with a fiscal impropriety; and rehired Ross while Bargerstock

remained suspended[1].

The first issue raised by WGCAC and Wilson has three parts. We will deal only with the third part which asks the question whether the trial court properly charged the jury on the defense of an affirmative privilege. We hold that it did not.

In an action for defamation, the plaintiff has the burden of proving:

(1) The defamatory character of the defamation;

(2) Its publication by the defendant;

(3) Its application to the plaintiff;

(4) The understanding by the recipient of its defamatory meaning;

(5) The understanding by the recipient of it as intended to be applied to the plaintiff;

1. As part of their appeal, WGCAC and Wilson question whether this final allegation by Bargerstock can actually be considered defamatory. That is, whether the action of rehiring Ross defamed Bargerstock and can support a claim against WGCAC and Wilson. We hold that it does not. Actions, like the dismissal of an innocent employee for theft, are capable of defamatory meaning and can sustain a cause of action when they are accompanied by verbal communication. *Berg v. Consolidated Freightways*, 280 Pa.Super. 495, 421 A.2d 831 (1980). Conduct directed at one party by another party can also sustain a cause of action for defamation. *Bennett v. Norban*, 396 Pa. 94, 151 A.2d 476 (1959). In Pennsylvania, however, conduct by a defendant directed at a third party has never been held to support a plaintiff's cause of action for defamation. This may be because of the difficulty involved in proving a connection between the conduct of the defendant towards the third party and the harm caused to the plaintiff. In the present case, Bargerstock argues that the rehiring of Ross directly defamed her. We note, however, that Ross was a member of a union and that the union filed a grievance against WGCAC after Ross was suspended. Ross' reinstatement came after that grievance was filed. (Notes of Testimony, 8/8/88, pp. 206–207). Bargerstock was not a union member. This illustrates the extenuating circumstances involved when we are asked to hold that conduct by the defendant directed towards a third party is actually defaming the plaintiff. Up to this point in time, Pennsylvania has limited defamation actions to communications and conduct directed by one party against another party. We see no reason to extend this cause of action based on the present case. It is only this final allegation against Wilson and WGCAC which does not support a cause of action. The rest of the allegations are not deficient.

(6) Special harm resulting to the plaintiff from its publication and, if applicable,

(7) Abuse of a conditionally privileged occasion.

42 Pa. C.S.A. § 8343(a)

A defendant may raise the defense that the communication was privileged and the burden is on the defendant to prove the "privileged character of the occasion on which it was published." 42 Pa. C.S.A. § 8343(b).

Bargerstock alleged in her amended complaint that she was defamed by WGCAC and Wilson because of remarks made to the local newspaper, the district attorney, police officers, various employees and other people associated with WGCAC. These remarks were allegedly made after the December 19, 1986 meeting during which Bargerstock was initially confronted by members of the WGCAC board. WGCAC and Wilson requested from the trial court an instruction to the jury on the privileged nature of those remarks. The trial court gave the following instruction:

Now I am instructing you as a matter of law that the defendants were privileged to discuss and communicate certain comments, and those comments were the statements that took place at the meeting on the 19th in which Mr. Wilson, Mr. Stash, Mrs. Owens, Mrs. Bargerstock and the gentleman who was the accountant, who had testified that he had called Mrs. Bargerstock for reports. That meeting was, as a matter of law, a privileged conversation. The persons who were at that meeting had a right to be there because they were involved in a business decision and a business investigation. However, when those parties leave that meeting, then any action by any of them must be determined independent of that first meeting. Now that doesn't mean that there still cannot be privileged communication or privileged statements made at a later date, but it means that each communication must be determined upon its own merit.

The testimony of Mr. Ealy who was also present at the meeting, according to the testimony of Mr. Eisiminger, that he communicated certain comments to Mr. Eisiming-

er. I believe, as a matter of law, that it was privileged that he would tell Mr. Eisiminger that he had new duties. I don't think that is in dispute in this case. It is up to you to decide, based upon Mr. Eisiminger's testimony and the weight you want to give to that testimony, whether or not Mr. Ealy abused any privilege he had and as a result defamed the plaintiff, Anne Bargerstock. That is one of the questions you must decide. Those are the instances in this case that I am holding as a matter of law that were either privileged communications or at least partially privileged communications. It is up to you to decide if there was an abuse of that communication.

(Jury Charge, 8/8/88–8/10/88, pp. 367–368.)

■ Whether a communication is conditionally privileged is a question for the court and whether that privilege is abused is a question for the jury. *Montgomery v. Dennison,* 363 Pa. 255, 69 A.2d 520 (1950). "A publication is conditionally privileged if the publisher reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know.... This privilege applies to private communications among employers regarding discharge and discipline." *Daywalt v. Montgomery Hospital,* 393 Pa.Super. 118, 573 A.2d 1116 (1990). A conditional privilege is abused if the plaintiff can show that the defendant acted with malice. *Berg v. Consolidated Freightways,* 280 Pa.Super. 495, 421 A.2d 831 (1980). The privilege can also be lost if the plaintiff can show that the defendant acted with negligence. *Banas v. Matthews International,* 348 Pa.Super. 464, 502 A.2d 637 (1985) This is a jury question that the jury cannot decide without proper guidance from the trial court.

■ A proper charge on conditionally privileged communications should begin with which communications the trial judge finds are privileged and which privilege they fall under. The judge should then instruct the jury that the privilege can be lost for each communication if the jury decides that the defendant abused the privilege. To find an abuse of the privilege, the jury has to find that the defen-

dant made the defamatory communication intentionally, with the knowledge that it was false, recklessly, without regard to whether it was true or false, outside of the performance of the defendant's duties which gave rise to the privilege, or that the defendant made a false statement without using reasonable care to determine the truth. (See Pennsylvania Selected Jury Instructions (Civil) § 13.09 Defamation: Defense of Privilege (1980)).

The jury charge given in the present case gives no guidance to the jury about what constitutes an abuse of a conditional privilege. The jury could not have possibly ascertained what a privileged communication is and how it can be abused from the charge that was given. Because of the inadequacy of the charge, we reverse the verdict and remand for a new trial.[2]

The second issue raised by WGCAC and Wilson is whether the trial court erred by failing to grant their post-trial motion for a judgment *non obstante verdicto* on Bargerstock's 42 U.S.C.A. § 1983 action. We hold that the trial court did err.

Bargerstock alleged in her amended complaint that the actions of WGCAC and Wilson which made up her defamation count not only constituted state action but also damaged her reputation and her ability to pursue her profession. An action under § 1983 exists when a person, acting under color of state law, deprives a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The United States Supreme Court has held that to establish a claim under § 1983, a person must allege more than simple defamation

2. We also question how the trial court determined that the two occasions mentioned in its charge were privileged while concluding that other communications were not. A close reading of the trial transcript reveals that a number of the "publications" which Bargerstock alleged were defamatory involved the same information that was discussed at the meeting. This information was then given to employees and people associated with WGCAC who were affected by Bargerstock's suspension.

by a state officer. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Beyond defamation, Bargerstock has alleged that the actions of WGCAC and Wilson have damaged her ability to pursue her profession. And yet, she has been reinstated in her old position with WGCAC at the same salary.[3]

■ On appeal from a denial of a motion n.o.v., this court must view all evidence in the light most favorable to the verdict winner. *Kubacki v. Citizens Water of Washington, Pa.*, 403 Pa. 472, 170 A.2d 349 (1961). Even in viewing the evidence in the light most favorable to Bargerstock as verdict winner, we can find nothing that supports her § 1983 claim. Her alleged defamation at the hands of WGCAC and Wilson is not enough, according to the U.S. Supreme Court, and she produced no evidence at trial to support her claim that her ability to pursue her profession was damaged. Therefore, we reverse the verdict of the trial court and remand this claim as well.

■ The third issue raised by WGCAC and Wilson is whether the trial court's charge on punitive damages was improper. We hold that it was. The trial court instructed the jury on punitive damages as follows:

> Now in determining the matter of punitive damages or whether or not you will grant punitive damages, you may determine or must determine whether the conduct of the defendants was so outrageous that in addition to compensatory damages which you may have awarded Mrs. Bargerstock on her negligence action, that you wish to award additional monies in order to punish the defendant or

3. The dissent argues that Bargerstock's § 1983 claim was based on the damages she suffered during the five months she was suspended from her position at WGCAC. This allegation is not included in her complaint or her amended complaint. The dissent further argues that Bargerstock should at least be compensated for the wages that she lost over the five month period. The trial court instructed the jury that they could consider lost wages as part of her damages under her § 1983 claim. The loss of wages, however, does not necessarily rise to the level of an infringement of Civil Rights. Bargerstock could possibly recover lost wages under a breach of contract or wrongful discharge suit. We note that both of those claims were included in either the complaint or amended complaint but were later withdrawn.

defendants for their conduct, and the purpose of punishing a defendant in a case like this must be looked at as a punishment and not Mrs.'s Bargerstock's rights to recover. Now if you want to punish a defendant or defendants in order to deter this type of activity from taking place in the future, or to send a message out that this type of conduct will not be tolerated, then and only then will you consider awarding punitive damages. Now I have stated twice that in order to award punitive damage (sic), the conduct must be outrageous. Now a person's conduct is considered outrageous under the law when he acts with such a bad motive or when he acts with such reckless indifference as to the interest of another party and the actions committed by him, in this case defamation. If you wish and intend to award punitive damage (sic), then you must be able to show or to find that the defendant or defendants had a bad motive or that they acted with reckless indifference to the interest of Mrs. Bargerstock.

(Jury Charge, 8/8/88–8/10/88, p. 370)

The trial court's instruction is proper as a general instruction on punitive damages for most tortious conduct. (See Pennsylvania Selected Jury Instructions (Civil) § 14.00 Punitive Damages—General Instructions (1980)). In defamation actions, however, punitive damages have required a different formulation. This court has noted that:

[b]ecause punitive damages in defamation actions are in effect a punishment for speech, the formulation of the appropriate standard has been influenced by constitutional considerations. In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974), the United States Supreme Court held '[T]he States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.' This is, of course, the familiar 'actual malice' formulation of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

*Geyer v. Steinbronn,* 351 Pa.Super. 536, 559, 506 A.2d 901, 913 (1986). The Pennsylvania Supreme Court has held that in order to award punitive damages to a private party plaintiff in a defamation suit, a jury must conclude that there was clear and convincing evidence that the defendant(s) acted with "actual malice." *Hepps v. Philadelphia Newspapers, Inc.,* 506 Pa. 304 485 A.2d 374 (1984) *reversed on other grounds,* 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986).

 A proper instruction on punitive damages in a defamation action would begin with the judge explaining the "clear and convincing" standard to the jury and how it is a higher standard than the "preponderance of the evidence" test used in most civil cases. The judge should then instruct the jury on the meaning of the term "actual malice." "Actual malice" means "that the defamatory publication was made either with knowledge that it was false or with reckless disregard of whether it was false." *Banas,* 348 Pa.Super. at 470, 502 A.2d 637. If it is apparent to the trial judge that there is not clear and convincing evidence to support an award of punitive damages, the trial judge should withdraw the question from the jury's consideration. See *Hepps,* 506 Pa. at 330–333, 485 A.2d 374.

The instruction given to the jury in the present case did not give a definition of "actual malice." Therefore, we reverse and remand this case for a new trial on this count as well. Because we are reversing on the first three issues we do not reach the final two issues.

Reversed and remanded. Jurisdiction relinquished.

CAVANAUGH, J., files a concurring and dissenting opinion.

CAVANAUGH, Judge, concurring and dissenting:

I respectfully dissent from the majority's reversal of a jury verdict in favor of Ann Bargerstock for the reasons which follow.

First, I disagree with the majority's holding which appears in its first footnote. I believe that the rehiring of one employee (Carolyn Ross) after suspending both employees (Ross and Bargerstock) for the same alleged impropriety is capable of defamatory meaning. Furthermore, in light of the jury's determination that the circumstances of the Bargerstock's continued suspension otherwise fulfilled the elements for a claim in defamation, WGCAC's decision to reinstate Ross but not Bargerstock after both were suspended for the same reason is clearly directed at Bargerstock.

The jury made a determination that the investigation proceeded in a way which falsely and unjustifiably targeted Ms. Bargerstock as the guilty party in the fraud. When it has already been established that a fraud occurred, it is unrealistic to conclude, *as a matter or law*, [1] that an employer's decision to reinstate, and therefore exonerate, one of the two potentially guilty individuals does not at least imply that the second individual was the guilty party. It is for the properly instructed jury, and not this appellate court, to determine whether an action is defamatory in fact and to decide whether the defamation was in fact directed at the plaintiff. Moreover, under the circumstances of this case, it was not unreasonable for the jury to have determined that the reinstatement of Ross during Bargerstock's continued suspension was defamatory by implication. [2]

In its first footnote, the majority implies that the fact that Ross, but not Bargerstock, was a union employee whose union filed a grievance on her behalf is an extenuating circumstance which somehow excuses WGCAC's actions in reinstating Ross but not Bargerstock. I fail to see why a union employee, who presumably has greater protection

1. This is the clear and explicit import of the majority's holding.
2. I also note that at the trial court adequately instructed the jury that the defamatory statement must apply to the plaintiff:
 ... You must also consider whether or not the application of that [defamatory] statement was to the plaintiff. Certainly Mrs. Bargerstock would not make up a claim for a defamatory statement made against myself or you; it must be against her....

against employer misconduct, should enjoy more freedom from defamation by an employer than a non-union employee or, for that matter, why Bargerstock's cause of action should fail merely because WGCAC chose to avoid conflict with the union at the expense of a non-union employee. WGCAC could very well have avoided problems with the union by reinstating both Ross and Bargerstock until it had determined which was the guilty party. Since WGCAC did not know who had taken the money, it was equally probematic to have reinstated Ross as Bargerstock in any event.

Lastly, with respect to the majority's sweeping holding in footnote one, I note that employers who in future wish to shield themselves from justifiable suits in defamation, without making reasonable investigation into alleged wrongdoing or using discretion to protect the reputations of their employees, need only temporarily suspend or fire more employees than could actually have committed the alleged improprieties, claim that an investigation is under way, and reinstate those employees who are least suspected, only later using care in carrying out the most significant portions of the investigation. The majority even permits the employer to retain pay withheld during the suspension *after* a suspended employee is cleared of any wrongdoing.

Second, I disagree with the majority's assertion that the court's charge to the jury was insufficient or erroneous so as to warrant a new trial. The entire charge, except for that relating to punitive damages, *see infra*, was sufficient and substantially correct in all respects.

Where a motion for a new trial is based on the sufficiency of the jury charge, this court must examine the charge in its entirety against the background of the evidence to determine whether error was committed. If the appellate court concludes that the charge was erroneous, a new trial will be granted only if the jury charge might have prejudiced appellant; the extent of the prejudice, however, need not be certain. *Sweitzer v. Dempster Systems*, 372 Pa.Super. 449, 539 A.2d 880 (1988). A review of the entire charge is necessary to determine whether error has occurred; a

new trial will be granted only where the instruction was fundamentally erroneous. *Id.; Commonwealth v. Proscodimo,* No. 24 W.D. Appeal Docket 1989, Supreme Court of Pennsylvania, (filed August 17, 1990).

The majority finds that the court never adequately defined conditional privilege for the jury in order that they could determine whether a conditional privilege was abused. In fact, the trial court found that a conditional privilege existed as a matter of law and explained why the privilege attached:

Now I am instructing you as a matter of law that the defendants were privileged to discuss and communicate certain comments, and those comments were the statements that took place at the meeting on the 19th ... That meeting was, as a matter of law, a privileged conversation. The persons who were at that meeting had a right to be there because they were involved in a business decision and a business investigation. However, when those parties leave that meeting, then any action by any of them must be determined independent of that first meeting. Now that doesn't mean that there still cannot be privileged communication or privileged statements made at a later date, but it just means that each communication must be determined upon its own merit.

(Notes of Testimony, p. 367.)

Further instruction in the same vein gave the jury more than adequate guidance as to what a privilege is and how it can be abused by indicating to the jury that communications under certain circumstances are protected because they are motivated by legitimate business concerns—which was the only kind of privilege at issue in this case. Rather than delving into the esoterics surrounding the entire law of privilege, the court communicated to the jury concrete, closely related examples of privilege upon which they could base their determinations with respect to other statements. This was entirely proper and certainly not so fundamentally erroneous as to require a new trial.

The majority also states that the trial court erred in failing to instruct the jury that it could only find an abuse of privilege if it determined that the defendant acted with negligence, that is, knew or should have known of the falsity of the statement. While that portion of the instruction quoted in the majority's opinion did not contain a clear expression of the level of intent (negligence) necessary to find that a privilege was abused, at another point in the court's instructions,[3] it told the jury that it would need to find that Bargerstock's employers acted recklessly in order to find an abuse of privilege.

Examining the charge in its entirety, as we are bound to do, reveals that the court instructed the jury that it would have to find a higher level of intent (recklessness) than is actually needed (negligence) in the making of the false statement in order to find that defendants abused their privilege. The court's instruction, far from inappropriately prejudicing appellants, actually benefitted them. The court's instruction also included every element which the majority states is necessary for the jury to evaluate properly the plaintiff's assertion that a conditional privilege was abused. Reversal on this ground is therefore inappropriate.

Third, I disagree with the majority's reversal of the trial court's refusal to grant appellants' post-trial motion for judgment *non obstante verdicto* on Bargerstock's 42 U.S. C.A. § 1983 action.

At the outset, I note that judgment n.o.v. should be entered only in the clearest of cases, when the facts are such that no two reasonable persons could fail to agree that the verdict was improper. Any doubts should be resolved

**3.** At pages 362–63 of the trial transcript, the court instructed the jury properly that plaintiff has the burden of proving abuse of privilege.
At page 386, the court instructed the jury as follows:
"Now if you find that a defamatory communication was made with disregard as to whether it was true or false, then you may find that the privilege which I just discussed was abused."
This instruction actually required the plaintiff to produce evidence of recklessness, which is a higher standard than the law requires, before the jury could find liability. Thus the charge unfairly benefitted, rather than prejudiced, appellants.

in favor of the verdict winner. *Geyer v. Steinbronn,* 351 Pa.Super. 536, 506 A.2d 901 (1986). On appeal, the sole duty of the appellate court is to decide whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every favorable inference which can reasonably be drawn from the evidence. *Id.*

Contrary to the majority's assertions, Bargerstock had alleged sufficient facts to sustain a Section 1983 action. In addition to proving injury to reputation, Bargerstock proved a change in her employment status at WGCAC. *See, Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (wherein the Court held that proof of such allegations would be sufficient to sustain a Section 1983 action).

The damages Bargerstock sought to recover were not only, as the majority asserts, her ability to secure future employment, but also damage to her reputation and her inability to work during the five-month period when she was suspended. While loss of wages does not *necessarily* rise to the level of an infringement of civil rights, as the majority notes, damage to reputation or the inability to pursue one' career may. *See, McKnight v. Southeastern Pennsylvania Transportation Authority,* 583 F.2d 1229 (3rd Cir.1978). Contrary to the majority's assertions, Bargerstock was entitled to be compensated for damage to her reputation and for having been unjustifiably prevented from working and pursuing her career *during* the five-month suspension period.

The case cited by the majority, *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), to support its reversal of the trial grant's refusal to grant judgment n.o.v. is completely inapposite. First, *Paul* did not involve defamation of an employee by the state employer and no break in employment was suffered by the defamation plaintiff. Second and more importantly, *McKnight v. Southeastern Pennsylvania Transportation Authority,* a Third Circuit case which referred to Pennsylvania law in determining the scope of the "liberty" interest to be protected under § 1983,

distinguished *Paul,* in which Kentucky law was at issue, because the Pennsylvania Constitution enunciates a state policy of protecting the right of reputation with which a federally-based cause of action would be consistent. Kentucky law, on the other hand, does not extend to its citizens any legal guarantee of present enjoyment of reputation which was been affected by the actions of government officials in *Paul.* Therefore, the instant case is governed by *McKnight* rather than *Paul* and the majority's reversal of judgment n.o.v. is inappropriate.

I do concur, however, in the majority's assertion that the court's instructions regarding punitive damages were insufficient. While I disagree with the majority's finding that the court did not give a definition of actual malice, I find that the court did neglect to instruct the jury that it would need to find clear and convincing evidence of actual malice before awarding punitive damages. Because the court failed to instruct the jury that a higher burden of proof is required in order to award punitive damages, I would remand for a trial on that issue alone.