## Haltzman v. Brill

*Mark S. Haltzman,* pro se.
*Michael J. McCaney Jr.,* for defendant.

WOOD, *J.,* September 27, 1995—

"Good name in man and woman, dear my lord,

Is the immediate jewel of their souls:

Who steals my purse steals trash; 'tis something, nothing;

'Twas mine, 'tis his, and has been slave to thousands,

But he that filches from me my good name

Robs me of that which not enriches him,

And makes me poor indeed."

*Othello,* by William Shakespeare.

In a recent case, our Commonwealth Court has observed that "preservation of an individual's reputation . . . is fundamental as it is recognized and protected by the Pennsylvania Constitution." *Simon v. Commonwealth,* 659 A.2d 631, 639 (Pa. Commw. 1995). No one can argue with that; the question which this case poses is, what proof of harm must a plaintiff produce in an action alleging harm to his reputation?

## BACKGROUND

This matter is before me on plaintiff's motion for post-trial relief. I entered a nonsuit against the plaintiff in this defamation action because I concluded that he had not produced competent evidence of damages.

At trial, plaintiff, an attorney, established that he had a business relationship with the defendant Edward Brill and Brill Ventures which ended poorly. Plaintiff brought suit against the defendant in Philadelphia alleging breach of contract and other claims.

Before the Philadelphia suit was resolved, plaintiff started doing investment work for a mortgage business called AMB. Plaintiff and Mr. Segal, a principal of AMB, attended a meeting with a Mr. Karr, a potential investor. During the meeting Karr asked about plaintiff's prior experience. Plaintiff explained that he worked for a company called Brill Ventures. Defendant seemed interested and asked several questions about the firm. (Unbeknownst to plaintiff at the time, defendant previously had solicited Karr to invest in Brill Ventures.) Plaintiff indicated that he did not wish to get into a discussion about Brill Ventures. Defendant then explained that Brill Ventures had approached him as a potential investor and that he wanted to know plaintiff's opinion of the firm. Plaintiff testified that he replied that, compared to Brill Ventures, the deal with AMB was "a sure winner."

Sometime after this meeting with Karr, defendant answered plaintiff's complaint in the Philadelphia action and counterclaimed, alleging that plaintiff had defamed him to Karr. Plaintiff denied making any defamatory statements and suspected that the defendant merely created the defamation claim as a defense to the litigation over his employment with Brill Ventures. The defendant

sent a letter to Karr relating what Karr had supposedly reported to the defendant, *i.e.,* the substance of the plaintiff's defamatory comments about the defendant. (See exhibit A.)

Defendant later gave copies of this letter to his attorneys, who included several former co-workers of the plaintiff. This infuriated the plaintiff because he did not want his former colleagues to believe that he would make defamatory statements about a former employer. Plaintiff then filed this action on the theory the defendant had defamed him by saying that the plaintiff made statements which he did not make. The only evidence of damage was that plaintiff was angered at the thought of what his former associates might think.

I entered a nonsuit because there was no evidence upon which a jury could base a damage award. Plaintiff argues that the evidence that he was defamed is enough to go to the jury.

## DISCUSSION

Before proceeding to a discussion of the damage issue, I wish to point out that there are a couple of other significant issues in this case.

First, is exhibit A capable of a defamatory meaning? This is one of the crucial decisions that a judge must make *as a matter of law* in a defamation action. Restatement (Second) of Torts §614; Sum. Pa. Jur. 2d, Torts, Libel and Slander, §18.8. One must look at the overall effect of a communication in making that determination. *Dunlap v. Philadelphia Newspapers Inc.,* 301 Pa. Super. 475, 491-93, 448 A.2d 6, 15 (1982). One could draw from this document that plaintiff had engaged in unethical business or legal practices. Therefore, I concluded that it was capable of a defamatory meaning.

Secondly, is the document privileged? One has a privilege to publish information in the interest of the publisher or the recipient, even though it may be untrue, if one acts in good faith. Restatement (Second) of Torts §§594 and 595. Privilege is generally considered a defense, and the burden is on the plaintiff to prove that the privilege was abused. *Bargerstock v. WGCAC,* 397 Pa. Super. 403, 580 A.2d 361 (1990). It is up to the court to decide if an occasion is privileged. *Id.*

I was tempted to come to that conclusion in this case, but I didn't because privilege is essentially a defense, and I was addressing the sufficiency of *plaintiff's* case in the motion for nonsuit.

Hence, we return to our initial question: had plaintiff proven damages?

Under traditional common-law rules of defamation, a jury could award different types of damages depending upon whether the plaintiff had proved ordinary defamation or defamation per se.[1] Generally, a plaintiff had to prove actual damages to recover in a case of ordinary defamation. However, in a defamation per se case (and I will assume, for purposes of this opinion that plaintiff was defamed per se), a plaintiff did not have to prove actual damage in order to recover; a jury would have been permitted to award *at least* nominal damages without reference to whether the plaintiff proved the existence of actual harm. Restatement (Second) of Torts §620. This type of award presumed damages based on the fact that the defamation had occurred, whether

---

1. There are four types of defamation per se: (1) false statements imputing criminal behavior to the plaintiff, (2) false allegations that the plaintiff has a loathsome disease, (3) false statements adversely reflecting on the plaintiff's fitness to conduct business, and (4) false allegations of sexual misconduct. Restatement (Second) of Torts §570.

or not the defamation actually caused demonstrable harm. See discussion in *Walker v. Grand Central Sanitation Inc.,* 430 Pa. Super. 236, 245-46, 634 A.2d 237, 241-42 (1993). Damages were even awarded in cases where the defamation caused only minimal harm to the plaintiff's reputation, either because the plaintiff had a bad reputation to begin with or because the defamation was not very serious. See generally, Note, *Slander & Slander Damages After Gertz and Dun & Bradstreet,* 38 Vill. L. Rev. 655 (1993).

A different approach came to be taken in cases involving the First Amendment to the United States Constitution. In a landmark decision, *New York Times v. Sullivan,* 376 U.S. 254 (1964), the United States Supreme Court ruled that a public official must prove malice, that is, reckless disregard for the truth or knowledge of falsity, to recover damages in a defamation action. In *Gertz v. Robert Welsh Inc.,* 418 U.S. 323, 349 (1974), the same court considered the issue of a "presumed" damage award against a media defendant in a defamation action. The court concluded that in cases involving public figure plaintiffs or media defendants, presumed damages could not be awarded unless "actual malice" had been shown because they could produce "runaway" verdicts, that is, verdicts based on the "largely uncontrolled discretion of juries to award damages where there is no loss. . . ." The danger this possibility posed to the First Amendment troubled the court. *Gertz, supra,* 418 U.S. at 349. The court stated that "[i]t is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury." *Gertz, supra,* 418 U.S. at 349. *Gertz* made the distinction between defamation per se and ordinary defamation unimportant in cases involving a media defendant by

effectively limiting a plaintiff's recovery to actual damages regardless of the type of defamation.

But the court left open the question of presumed damages in cases involving plaintiffs and defendants who were private, non-media figures. See discussion in *Hepps v. Philadelphia Newspapers Inc.,* 506 Pa. 304, 320-21, 485 A.2d 374, 383 (1984). In *Agriss v. Roadway Express Inc.,* 334 Pa. Super. 295, 483 A.2d 456 (1984), a case substantially similar to this one, the Pennsylvania Superior Court set aside the trial court's nonsuit and held that a private plaintiff could recover for harm to his reputation even though he had not proved "special damages." The court explained "[a plaintiff] may recover for any injury done [to] his reputation and for any other injury of which the libel is the legal cause" and these cases should "be guided by the same general rules . . . that govern other types of tort recovery." *Agriss, supra* at 328-29, 483 A.2d at 474. The court was not dissuaded by the fact that 42 Pa.C.S. §8343(a) enumerates as one of the elements of defamation which a plaintiff must prove: "(6) *Special harm* to the plaintiff from [the] publication." (emphasis supplied)

Soon after the Pennsylvania Superior Court decided *Agriss,* the United States Supreme Court had another opportunity to consider the constitutionality of a damage award in *Dun & Bradstreet v. Greenmoss Builders,* 472 U.S. 749 (1985). *Dun & Bradstreet* concerned a business entity innocently defamed by another business entity. The court held that a private individual was not required to prove malice to recover in defamatory matters of purely private concern and states could apply common-law rules of defamation. *Dun & Bradstreet, supra,* 472 U.S. at 761-62. In short, such matters did not invoke First Amendment considerations.

There matters stood until the Superior Court had occasion to revisit the issue of presumed damages in *Walker v. Grand Central Sanitation Inc., supra.* In *Walker,* the court initially examined the common-law distinction between slanders per se and per quod, and found that the distinction had outlived its usefulness. The court then proceeded to reconsider the issue of "presumed damages" in a private context. The court interpreted the Pennsylvania Supreme Court's review of the record in *Solosko v. Paxton,* 383 Pa. 419, 119 A.2d 230 (1955), as support for the conclusion that a plaintiff must show at least *general* damages to recover, even in an action based on defamation per se. The *Solosko* court spoke to a case in which a doctor was falsely accused of being a communist and won an award of $10,000. The court ruled that because one could be subject to criminal penalties for being a communist, the defamation was per se and the plaintiff did not have to prove special damages in order to recover. However, the court reduced the jury verdict to $3,500 because it found the award was excessive based on the record. The Superior Court explained the significance of *Solosko:*

"If damages were truly 'presumed,' the court would have no means by which to evaluate the jury award because . . . no evidence of damages would ever have been presented to the jury. The Supreme Court's very act of reviewing the record for ground upon which the jury may award damages implies what has never been said—the burden is on the plaintiff to establish at least general damages. . . . [I]f a plaintiff in a [defamation] per se case were not required to prove any damages whatsoever, why does a rule of Pennsylvania law provide that she need not prove 'special' damages? Why not hold that an alleged victim of [defamation]

per se has no duty to plead 'damage' and leave it at that?" *Walker, supra* at 249-50, 634 A.2d at 243-44.

The court noted that there was no requirement that Pennsylvania presume damages and held that "a defendant who publishes a statement which can be considered [defamation] per se is liable for the proven, actual harm the publication causes." *Id. Walker* specifically adopted section 621 of the Restatement (Second) of Torts.

Based on *Walker,* I conclude that the current rule is that a plaintiff cannot recover in a defamation action unless he can prove that the value of his good name is somehow diminished by the defamation. *Walker* appears to emphasize that there was no proof of actual harm to plaintiff's reputation, nor any evidence of "adverse emotional reaction." *Walker, supra* at 252, 634 A.2d at 245. Here, there is no showing that anyone thought the less of plaintiff because of the publication of exhibit A. The only possible harm that plaintiff testified to was the anger he experienced at the thought that the defendant had published the defamatory letter to his former colleagues. This reaction of anger does not appear to me to be what is meant by "adverse emotional reaction" in *Walker.* I note that in a recent tort case based on negligent infliction of emotional distress, even an "adverse emotional reaction" was not considered to be sufficient to permit recovery. *Armstrong v. Paoli Memorial Hospital,* 430 Pa. Super. 36, 42-45, 633 A.2d 605, 608-609 (1993), *appeal denied,* 538 Pa. 663, 649 A.2d 666 (1994).

In sum, I conclude that plaintiff cannot recover in this case because Pennsylvania no longer recognizes presumed damages in defamation cases, but instead requires a showing of "general damages," that is, "proved, actual harm caused to the reputation of the

person defamed." Restatement (Second) of Torts §621.[2] Therefore, I enter the following

### ORDER

And now, September 27, 1995, upon consideration, plaintiff's motion to take off the nonsuit is denied.

2. I am not unmindful that section 623 of the Restatement allows recovery for "emotional distress," and that section 620, comment a, suggests that an award of nominal damages might be appropriate to vindicate plaintiff's character. But I conclude from reading *Walker* that the focus is, and should be, on diminution of reputation. I cannot envision that the trial courts of this Commonwealth should be made available for the personal vindication of everyone who becomes angry because another makes a statement that calls one's integrity into question. Such incidents, while regrettable, should not be made the subject of action unless they cause actual harm to the reputation.