# Jackson v. Rohm and Haas Company

*Richard Silverberg,* for plaintiff.
*James D. Pagliaro* and *Paul Greco,* for defendant Rohm & Haas.
*Nancy Gellman,* for defendant McCrory.

COLINS, *J.,* April 10, 2002—

## I. PROCEDURAL HISTORY

Plaintiff Mark Jackson, sued Rohm and Haas Company, Michael McLaughlin, Celia Joseph, and Wayne Davis for invasion of privacy, intentional infliction of emotional distress and civil conspiracy. Original service of this action was served upon defendants on June 17, 1999. Plaintiff also sued June McCrory for defamation. Original service of this action was served upon June McCrory on July 1, 1999. On August 31, 2000, the two cases were consolidated. A jury was selected on September 21, 2001. In the middle of the trial, Michael McLaughlin, Celia Joseph, and Wayne Davis were individually released from the case. The claim of civil conspiracy was dismissed. Pursuant to a 20-day trial, the jury returned a verdict of $150,000 in favor of plaintiff and against R&H on October 19, 2001.

Plaintiff filed timely post-trial motions seeking removal of nonsuit, an additur, or in the alternative, a new trial. Following receipt of the transcript, written memoranda were submitted by the parties and oral argument was presented to the court on February 14, 2001.

After considering all of the written and oral presentations by the parties, the defendant R&H's motion for post-trial relief is granted. Judgment n.o.v. granted in favor of defendant R&H.

## II. FACTUAL BACKGROUND

June McCrory, a secretary at R&H, and Mark Jackson, an accountant at R&H, met at their place of employment, R&H. Mark Jackson called June McCrory on Friday, June 26, 1998, to ask her to have lunch the following week. During the conversation, Mr. Jackson offered to drive June McCrory home that evening so she would not have to take a cab in the middle of the SEPTA strike. June McCrory accepted. Mr. Jackson and Ms. McCrory left work together. When they arrived at Ms. McCrory's home, they continued talking in the car. Mr. Jackson asked Ms. McCrory to dinner for the evening and she accepted. They went to dinner and two nightclubs. At the end of the evening, Mr. Jackson drove Ms. McCrory to his apartment. The events after this point in the evening are disputed.

Ms. McCrory told a friend and co-worker about allegations of sexual assault that occurred on the evening she spent with Mr. Jackson. The friends encouraged Ms. McCrory to report the matter. On July 10, 1998, the friends took Ms. McCrory to the human resources office and Ms. McCrory spoke with two attorneys from R&H. Later, Mr. Jackson was interviewed about the report from Ms. McCrory.

After interviewing both parties, company representatives concluded that they were unable to resolve the differences between the recitation of events given by Mr.

Jackson and Ms. McCrory and informed the parties that the company would take no further action.

Mr. Jackson continued to be employed by R&H and was promoted in March 2000. In August 2000, he left on disability claiming he was no longer able to work because of "severe depression" which he contended was related to events at issue in this litigation. Ms. McCrory left R&H in December 1998 and stated that the sexual assault incident prompted her to seek other employment.

Plaintiff Mark Jackson, brought claims arising from R&H's response to certain information obtained from June McCrory regarding events that took place on June 26-27, 1998. Mark Jackson brought claims of invasion of privacy and intentional infliction of emotional distress against the company and a claim of defamation against June McCrory. June McCrory filed counterclaims of assault and battery and intentional infliction of emotional distress.

## III. LEGAL DISCUSSION

### A. *The Plaintiff's Motion for Judgment N.O.V. Must Be Granted*

Pennsylvania law has long held that a motion for judgment n.o.v. is properly entered only in clear cases, where viewing the evidence in the light most favorable to the verdict winner and granting the verdict winner every reasonable and favorable inference there is insufficient evidence to sustain a verdict. *Sundlun v. Shoemaker,* 421 Pa. Super. 353, 358, 617 A.2d 1330, 1333 (1992). A judgment n.o.v. is appropriate where either the evidence is such that no two reasonable minds could disagree that

the outcome should have been rendered in favor of the movant or the movant is entitled to a judgment as a matter of law. *Moure v. Raeuchle,* 529 Pa. 394, 604 A.2d 1003 (1992). In this case, movant, R&H, is entitled to a judgment as a matter of law.

### 1. A Review of the Facts Presented at Trial Indicate That Mr. Jackson's Claims Were Barred by the Pennsylvania Workers' Compensation Act

R&H claimed that a judgment n.o.v. was required because the Pennsylvania Workers' Compensation Act barred Mr. Jackson's invasion of privacy claim as a matter of law. R&H further contended that the personal animus exception to the WCA, raised by Mr. Jackson, did not apply in this case. This court agrees.

The WCA provides exclusive benefits for workers who suffer injury arising in the course of employment or in relation to employment. 77 P.S. §411(1). Under the Act, the employee gives up his or her common-law right to damages for any injury occurring in the course of employment in exchange for the exclusive statutory right to compensation for all injuries. *Socha v. Metz,* 385 Pa. 632, 637, 123 A.2d 837, 839 (1956). This exclusivity provision has been set forth in section 303 of the Act, stating:

"The liability of an employer under this Act shall be exclusive and in place of any and all other liability to such employes [sic] . . . otherwise entitled to damages in any action at law or otherwise on account of any injury or death defined in [section 411]." 77 P.S. §481.

The exclusive effect of the Act is to immunize an employer from civil suits brought by their employees for

work-related injuries. *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 469 A.2d 158 (1983). This not only includes negligence claims, but also intentional tort claims against an employer. See *Poyser v. Newman & Company Inc.,* 514 Pa. 32, 36, 522 A.2d 548, 550 (1987).

Mr. Jackson contended that the injury he suffered was not barred by the WCA. In order for Mr. Jackson's contention to be valid, his injury must have arisen outside his course of employment or have fallen under an exception, namely the personal animus exception.

The first issue before this court was to decide whether Mr. Jackson's injuries were work-related. If so, the WCA barred Mr. Jackson's civil claim. Whether a claimant is acting within the scope of employment at the time of the injury so as to fall within coverage of the WCA is a question of law to be determined on the basis of the findings of fact. 77 P.S. §1. *Albright v. Fagan,* 448 Pa. Super. 395, 671 A.2d 760 (1996). Based on the facts presented at trial the court finds that Mr. Jackson's injury arose from the workplace and therefore, his tort claim against R&H was barred by the WCA.

Mr. Jackson claimed that his injury arose outside the course of his employment. Plaintiff testified that he and June McCrory went on a date on a Friday night that resulted in a consensual sexual encounter between plaintiff and Ms. McCrory. Mr. Jackson claimed that the evening was purely social. He further claimed that any injury that arose from this incident was outside the course of employment.

Mr. Jackson's assertions did not provide a full accounting of the events. An accurate reading of the record included facts that Mr. Jackson and Ms. McCrory initially

met at work. 9/24/01 a.m. tr. 99. Mr. Jackson called Ms. McCrory at work. 9/24/01 a.m. tr. 101. He made plans with Ms. McCrory at work while they were both at work. 9/24/01 a.m. tr. 101-102. They met in the lobby at work at the end of the work day. 9/24/01 a.m. tr. 106. The evidence presented at trial further reflected that work was a topic for a portion of the evening. 9/24/01 p.m. tr. 3-5; 9/25/01 a.m. tr. 37.

Mr. Jackson focused on the evening out with June McCrory and claimed that his injuries arose from the night out with her. The record does not support this contention. The injuries for which plaintiff sought recovery against defendant R&H stemmed from R&H's interview and the manner in which the interview was conducted. Were it not for the employer-employee relationship between Mr. Jackson and R&H, R&H never would have interviewed Mr. Jackson.

The record revealed that Mr. Jackson's alleged injuries occurred when the company employees responded to a report of sexual harassment and inquired about the evening. Mr. Jackson's testimony revealed the injuries for which he sought compensation. Mr. Jackson was called to an interview at work which took place towards the end of the business day. 9/25/01 p.m. tr. 95. The company asked "horrible questions" during the interview. 9/24/01 p.m. tr. 43. Mr. Jackson claimed he "couldn't breathe" during the interview. 9/24/01 p.m. tr. 45-46. Mr. Jackson was "terrified" during the interview. 9/24/01 p.m. tr. 49. Mr. Jackson was crying during the interview. 9/24/01 p.m. tr. 53, 54. Mr. Jackson testified that he felt "just real messed up." 9/24/01 p.m. tr. 54. Mr. Jackson became angry and humiliated during the interview. 9/24/01

p.m. tr. 55. When Mr. Jackson received a confidential letter indicating the outcome of the company's investigation, he "became physically ill." 9/24/01 p.m. tr. 60-63. Eventually, Mr. Jackson discovered that Nigel Spence and Tanya Miller, two additional people who worked at R&H, were involved in the investigation. 9/25/01 p.m. tr. 22. He felt he could no longer work because of the investigation which took place at work. He left work on disability as a result of the investigation. 9/24/01 p.m. tr. 92. The evidence revealed that Mr. Jackson's injuries occurred from the interviewing process and arose at the workplace during work hours when Mr. Jackson was required to be at work. If there was no report of sexual harassment in the workplace no interviewing process would have taken place in the workplace and Mr. Jackson would not have been injured.

June McCrory informed R&H on July 10, 1998, about having unconsenual sex with Mr. Jackson. She was "troubled" about seeing him at work. 10/02/01 p.m. tr. 6. Ms. McCrory was "not at all" "looking forward to having contact with Mr. Jackson at the workplace." 10/02/01 p.m. tr. 12. He called and e-mailed her at work. *Id.* She was also concerned about preventing the alleged incident from occurring to any other victim. 10/02/01 p.m. tr. 6. R&H believed Ms. McCrory's claim constituted sexual harassment. See *Huitt v. Market Street Hotel Corp.,* 1993 WL 245744 (D. Kan.) (1993) (finding one incident of rape, if proven, constitutes sexual harassment and supports claim of hostile work environment, even if conduct did not occur at workplace where an upper level employee made plans to drive lower level employee home).

Mr. Jackson claimed that since the evening was social and not work-related, R&H employees had no right to ask him about it. The sexual encounter in question took place outside the workplace and was unrelated to work. Mr. Jackson, therefore, felt that R&H invaded his privacy. However, the evidence showed that the company, R&H, had a federally mandated duty to investigate and follow up on June McCrory's report of sexual harassment. The company was simply fulfilling its duty as required by law. Even if Mr. Jackson's privacy was invaded by R&H, his claim for invasion of privacy was barred by the WCA. See *King v. United Parcel Service Inc.,* 15 D.&C.4th 538 (Delaware Cty. 1992).

As a matter of public policy, investigations into claims of sexual harassment are not only encouraged, they are mandated. This is evidenced by the fact that there is a federal law mandating that such claims be investigated. The United States Supreme Court has addressed the issue of sexual harassment in the workplace. The Federal Civil Rights Act of 1964 (Title VII) governs sexual harassment in the workplace. 42 U.S.C. §2000(e). Under this federal law an employer must investigate claims of sexual harassment or risk liability themselves. *Faraquah v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2292-93, 141 L.Ed.2d 662 (1998).

In fulfilling its federally mandated duty, R&H initiated a brief interviewing process into the sexual harassment claim. See *Malik v. Carrier Corp.,* 202 F.3d 97 (2000) (mandating employer's investigation into a sexual harassment claim; finding that a worst-case scenario must govern the conduct of employer's investigation). Company officials met with June McCrory for about an hour.

10/02/01 a.m. tr. 25. Company officials met with Mr. Jackson for approximately one and a half hours to discuss the allegations. 9/25/01 p.m. tr. 104. The company came to a decision in about 10 to 15 minutes which Mr. Jackson considered to be "rather quickly." *Id.* Details of the investigation were kept confidential, even from Mr. Jackson's supervisors so that the privacy and integrity of all involved could be maintained while the report was being investigated. 9/25/01 p.m. tr. 104. During the interviewing process, company officials were made aware that the plans for Jackson and McCrory to spend time together began with a phone call at work. The two met at work and the conversation between a superior employer and subordinate consisted of work and promotions. R&H properly investigated the report of sexual harassment. The questions asked during the interview, though uncomfortable, were necessary for a proper investigation into a sexual harassment claim. See *Malik v. Carrier Corp.*, 202 F.3d 97 (2000). Since this investigation was part of the proper employer/employee relationship, any claim from injury arising from the interview are barred by the WCA. See *Schweitzer v. Rockwell International,* 402 Pa. Super. 34, 50-51, 586 A.2d 383, 391 (1990).

Mr. Jackson next contended that even if this court were to find that the injury he suffered did not arise outside of his course of employment, he had a valid claim under the personal animus exception to the WCA. The personal animus exception provides that an employee may bring a cause of action based upon an injury occurring within the course of employment only if the injury was "caused by an act of a third person intended to injure the employe because of reasons personal to him, and not di-

rected against him as an employee or because of his employment." *Shaffer v. Procter & Gamble,* 412 Pa. Super. 630, 635, 604 A.2d 289, 292 (1992); 77 P.S. §411(1). "If the third party would have attacked a different person in the same position as the injured employee, the attack falls outside the 'third party attack' exception." *Id.* at 635, 604 A.2d at 292 (quoting *Vosburg v. Connolly,* 405 Pa. Super. 121, 126-27, 591 A.2d 1128, 1131 (1991)). If the personal animus exception applied, Mr. Jackson was free to pursue any common-law remedy available against the employer.

The appropriate inquiry as to the personal animus exception is whether the injury is personal in nature and not a part of the proper employer-employee relationship. *Schweitzer v. Rockwell International,* 402 Pa. Super. 34, 586 A.2d 383 (1990). When the injury caused is due to personal and not work-related reasons, the injury cannot be said to have risen out of employment, even though the injury occurred during work hours and at the place of employment. *Id.* However, in determining whether an injury occurred during the course of employment there is a rebuttable presumption that the injury is work-related when the injury occurs at the workplace. *Wills Eye Hospital v. W.C.A.B. (Dewaele),* 135 Pa. Commw. 6, 582 A.2d 39 (1988), *aff'd per curiam,* 525 Pa. 504, 582 A.2d 857 (1990).

Section 411 of the Act specifies, in defining what constitutes an "injury arising in the course of employment," that the term does not include "an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employe or because of his employment." This

provision has been interpreted to permit an employee to maintain a common-law tort action against his employer "whenever his or her injury is the result of an attack or assault by a third person or fellow employee for reasons that are *personal* to the attacked and *not connected with the victim's employment.* To fit within this exception, the third party's or fellow employee's act must have been motivated by his animosity against the injured employee. If the third party would have attacked a different person in the same position as the injured employee, the attack falls outside the 'third party attack' exception." *Vosburg v. Connolly,* 405 Pa. Super. 121, 126-27, 591 A.2d 1128, 1131 (1991). (emphasis in original)

Both plaintiff and defendant R&H focused on the actions and alleged animosity R&H employees directed towards Mr. Jackson. There was no allegation that any acts of June McCrory constituted animosity directed towards Mr. Jackson; nor should any animosity by June McCrory bear any effect on Mr. Jackson's claim that R&H's employees held personal animus for Mr. Jackson.

In this case, company officials interrogated Mr. Jackson about intimate details of a sexual encounter. The record clearly reflected that the reason the company employees inquired into the encounter was because an employee reported a claim of sexual harassment in the workplace. Mr. Jackson stipulated that R&H employees involved in the investigation were acting in the course of their employment. 10/16/01 p.m. tr. 22:4 to 25:7. Mr. Jackson also conceded that he knew of no reason of why Michael McLaughlin or Wayne Davis, the two people who interviewed him, might harbor any personal ani-

mus towards him. 9/25/01 p.m. tr. 84-86, 95-96. A review of the record also reflected that there was no evidence presented indicating that R&H desired to harm Mr. Jackson personally. 10/5/01 p.m. tr. 12:21 to 13:16; 10/9/01 p.m. tr. 41 to 46; 10/11/01 a.m. tr. 10 to 12; 10/16/01 a.m. tr. 87. In fact, a review of the record indicated that R&H took steps to protect the privacy of the parties involved in the investigation. There was no evidence presented from which a jury could have reasonably concluded that R&H treated Mr. Jackson differently than it would have treated any other employee who had been accused of raping a co-worker. Mr. Jackson failed to show that R&H's investigation into a report of sexual harassment was motivated by a history of personal animosity toward him; therefore, he failed to prove a claim which would fall under the personal animus exception. See *Feidler v. Morris Coupling Co.,* 784 A.2d 812 (Pa. Super. 2001).

As such, Mr. Jackson's claim is barred as a matter of law under the WCA. R&H's motion for judgment n.o.v. on the claim of invasion of privacy is granted.

## B. *The Plaintiff's Motion for Removal of Nonsuit and for a New Trial Must Be Denied*

### 1. Trial Court Properly Granted a Nonsuit As to Plaintiff's Claim for Punitive Damages

A defendant may move for compulsory nonsuit to test the sufficiency of a plaintiff's evidence. *Hatbob v. Brown,* 394 Pa. Super. 234, 237, 575 A.2d 607, 608 (1990); *Francioni v. Gibsonia Truck Corp.,* 472 Pa. 362, 371, 372 A.2d 736, 740 (1977). Pennsylvania law has long

held that a motion for nonsuit should be granted when the plaintiff has not established a cause action. *Hatbob,* 394 Pa. Super. at 237, 575 A.2d at 608. In deciding a motion for nonsuit the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. *Id.* It is the duty of the trial court to determine whether the plaintiff has introduced sufficient evidence to establish the necessary elements to maintain a cause of action, prior to the submission of the case to the jury. *Id.* The trial court properly ruled as a matter of law, that plaintiff failed to present sufficient evidence to allow punitive damages to be presented to the jury. 10/16/01 p.m. tr. 58-59.

### a. *Defendant McCrory's conduct did not rise to the necessary standard for punitive damages*

The trial judge must determine whether the plaintiff presented sufficient evidence to support a punitive damages claim, that is, the facts from which a jury might reasonably conclude that preponderance of the evidence establishes outrageous conduct by the defendant. *Martin v. Johns-Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985).

Punitive damages are properly assessed in cases where there is outrageous behavior, where the defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. *Williams v. Syed,* 782 A.2d 1090 (Pa. Commw. 2001). Actions of outrageousness demonstrate intentional, willful, wanton or reckless conduct and are awarded to punish that person for such conduct. *SHV Coal Inc. v. Continental Grain Co.,* 526 Pa. 489, 587 A.2d 702 (1991).

To award punitive damages for a claim based on reckless conduct the plaintiff must demonstrate that the defendant's conduct involved *"easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence."* *Moran v. G. & W.H. Corson Inc.,* 402 Pa. Super. 101, 114, 586 A.2d 416, 423 (1991). (emphasis in original) Thus, "punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." *Chambers v. Montgomery,* 411 Pa. 339, 344, 192 A.2d 355, 358 (1963). The plaintiff must also demonstrate that there was knowledge or reason to know of a high degree of risk of physical harm to another, by the defendant. Restatement (Second) of Torts §500 comment (a); *Martin v. Johns-Manville Corp.,* 508 Pa. at 171, 494 A.2d at 1097.

In order for a judge to allow a claim of punitive damages to go to the jury in a defamation case, a plaintiff must present evidence of the defendant's intent behind his or her actions to demonstrate actual malice by clear and convincing evidence. *Bargerstock v. Washington Greene Community Action Corporation,* 397 Pa. Super. 403, 415, 580 A.2d 361, 375 (1990).

In this case, Mr. Jackson presented evidence that June McCrory falsely accused him of rape. He presented no evidence as to June McCrory's state of mind when falsely accusing him of rape. Without presenting evidence as to the defendant's intent behind his or her actions, a plaintiff cannot demonstrate actual malice by clear and convincing evidence. Such evidence is required to make a case for punitive damages in a defamation claim.

*Bargerstock,* 397 Pa. Super. at 415, 580 A.2d at 375. The trial court properly granted nonsuit for punitive damages as to June McCrory.

### b. *Defendant Rohm and Haas' conduct did not rise to the necessary standard for punitive damages*

Even if Mr. Jackson had a valid claim against Rohm and Haas that was not barred by the WCA, punitive damages were properly kept from the jury. Again, the standard is the same. The trial judge must determine whether the plaintiff presented sufficient evidence to support a punitive damages claim, that is, the facts from which a jury might reasonably conclude that preponderance of the evidence establishes outrageous conduct by the defendant. *Martin v. Johns-Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985).

Punitive damages are properly assessed in cases where there is outrageous behavior, where the defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. *Williams v. Syed,* 782 A.2d 1090 (Pa. Commw. 2001). Actions of outrageousness demonstrate intentional, willful, wanton or reckless conduct and are awarded to punish that person for such conduct. *SHV Coal Inc. v. Continental Grain Co.,* 526 Pa. 489, 587 A.2d 702 (1991).

Mr. Jackson's claim that punitive damages should be allowed to be presented to the jury with regard to R&H stemmed from the allegation that there were a couple additions to the notes taken from the interview. 10/04/01 a.m. tr. 20, 33, 61, 62, 64; 10/14/01 p.m. tr. 42. A couple numbers and a circle were added to the notes. *Id.* These notations or additions were insubstantial and in no way

changed the substance of the notes. The evidence was not sufficient to sustain a claim that R&H acted with an evil motive or reckless indifference. A review of the Pennsylvania case law dealing with documents or notes in which a claim of punitive damages was presented to the jury indicates that the court properly refrained from allowing a claim of punitive damages to be presented to the jury with regard to R&H. See *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 262 Pa. Super. 331, 396 A.2d 780 (1978) (allowing punitive damages to be presented to jury where defendant refused to cooperate in providing documents to plaintiff); *Forman v. Cheltenham National Bank,* 348 Pa. Super. 559, 502 A.2d 686 (1985) (allowing punitive damages to be presented to jury where defendant submitted forged documents); *Romah v. Hygienic Sanitation Co.,* 705 A.2d 841 (Pa. Super. 1997) (allowing punitive damages to be presented to jury where plaintiff alleged that defendant intentionally concealed test results).

### c. The law of the case doctrine did not preclude the trial court from granting a nonsuit as to punitive damages

Mr. Jackson claimed that the defendants' claims for punitive damages were prohibited by the law of the case doctrine. The law of the case doctrine did not apply to this case. The defendants' motion for nonsuit as to punitive damages were not previously addressed and therefore the law of the case doctrine did not apply. *Goldey v. Trustees of University of Pennsylvania,* 544 Pa. 150, 155-56, 675 A.2d 264, 267 (1996) (holding that law of the case doctrine prevents judges sitting in coordinate

jurisdiction with one another from overruling motions of the same kind). The trial court properly held the law of the case doctrine did not apply.

### 2. The Plaintiff's Motion for Additur and New Trial Must Be Denied

Plaintiff moved for additur and in the alternative a new trial. Plaintiff contended that due to injuries to his reputation and substantial evidence of mental anguish and suffering, that no jury could have awarded zero damages.

It was the jury's duty to assess damages. As fact-finders, they have the sole responsibility to weigh the veracity and credibility of the witnesses and their testimony. *Dranzo v. Winterhalter,* 395 Pa. Super. 578, 577 A.2d 1349 (1990). "A [jury] verdict [will only be] set aside as inadequate when it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." *Id.* at 585, 577 A.2d at 1352. "If the verdict bears a reasonable resemblance to the damages proved, the appellate court will not disturb the verdict merely because the damages are less than the reviewing court might have awarded." *Slaseman v. Myers,* 309 Pa. Super. 537, 541, 455 A.2d 1213, 1215 (1983). To support the grant of a new trial for inadequacy of the damage award, the injustice of the verdict "should stand forth like a beacon." *Cooley v. Jefferson Bank,* 355 Pa. Super. 1, 4, 512 A.2d 713, 714 (1986). In the instant case, there is no evidence that the verdict resulted from passion, prejudice, partiality or corruption and, therefore, no additur will be awarded or a new trial granted.

### a. *The jury verdict was not unreasonable*

The jury's award of zero damages to Mr. Jackson in his defamation claim against June McCrory did not shock one's sense of justice. Mr. Jackson correctly stated that when a communication is found to be slander per se, the plaintiff need not prove any pecuniary loss. The defendant will automatically be liable for the actual harm suffered as a result of the communication. *Brinich v. Jencka,* 757 A.2d 388 (Pa. Super. 2000). However, Mr. Jackson assumed that the communication caused actual harm. Whether or not there was actual harm was for the jury to decide. *Walker v. Grand Central Sanitation Inc.,* 430 Pa. Super. 236, 250, 634 A.2d 237, 244 (1993); *McGovern v. Chilson,* 47 D.&C.4th 449 (Bradford Cty. 2000). A review of the record indicated that the jury was presented with ample evidence to support the award of zero damages to Mr. Jackson. Mr. Jackson suffered no loss of wages or medical expenses. In fact, Mr. Jackson received promotions and salary increases. The jury weighed the evidence and found that Mr. Jackson received no injury caused by June McCrory.

### 3. Plaintiff's Motion To Mold the Verdict Must Be Denied

The court's worksheet indicated a verdict in favor of June McCrory. This was correct because there were no damages awarded. To prove a defamation claim, the plaintiff must prove actual damages. *Walker,* 430 Pa. Super. at 250, 634 A.2d at 244. The jury found Mr. Jackson suffered no actual damage, so they awarded zero damages. Mr. Jackson provided no authority to bolster his claim that the trial worksheet was incorrect.

## IV. CONCLUSION

The foregoing explains the reasons for the court's decision in this case.

## ORDER

And now, April 10, 2002, after careful consideration of the motions for post-trial relief, and review of all briefs submitted by the parties, and after hearing post-trial argument, it is hereby ordered that for the reasons set forth in the court's memorandum of law filed this date, defendant Rohm and Haas Company's motion for post-trial relief is granted. Judgment n.o.v. is granted in favor of defendant Rohm and Haas Company.

It is also ordered that for the reasons set forth in the court's memorandum of law filed this date, plaintiff Mark Jackson's motions for post-trial relief are denied.

It is also ordered that the motion of defendant and counterclaimant June McCrory for post-trial relief is dismissed as moot.